**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
　　　　　　　　　　　　　　　　　　　　　　　)
MANUEL BOLIVAR, ANDRES RUBIO and　　　)
JANNETH QUINTERO, individually and on behalf )
of all those persons similarly situated,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　)　　Case No.: 12-CV-00781
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
FIT INTERNATIONAL GROUP CORP., FOREX　)
INTERNATIONAL TEAM INC., JAIRO　　　)
ENRIQUE SANCHEZ, and DILIA MARGARITA )
BAEZ,　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)
_____)

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**KACHROO LEGAL SERVICES, P.C.**

245 Park Avenue
24th Floor
New York, NY 10167
Telephone: (857) 829-3041
Facsimile: (617) 864-1125
E-Mail: gkachroo@kachroolegal.com

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................................................................................ iii

**INTRODUCTION** ........................................................................................................................ 1

**ARGUMENT** ............................................................................................................................... 2

**I.   THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a)** ......... 2

    A.  The Proposed Class Is So Numerous That Joinder Is Impracticable ........................... 2

    B.  Plaintiffs' Claims Involve Common Questions of Law and Fact ................................. 3

    C.  Plaintiffs' Claims and Defenses Are Typical of Those of the Members of the Class .. 5

        *1.   The Claims of the Class Representatives are Typical* ............................................. 5

        *2.   The Class Representatives Are Not Subject to Unique Defenses* ........................... 6

    D.  Plaintiffs Satisfy the Adequacy of Representation Requirement ................................. 7

**II.   THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3)** .... 8

    A.  Common Questions of Law and Fact Predominate ...................................................... 8

    B.  Reliance Will Be Proven on a Class-Wide Basis ...................................................... 10

        *1.   Circumstantial Evidence Common to All Class Members Can Be Used to Prove Reliance* .................................................................................................... 10

        *2.   This Case Presents Strong Circumstantial Evidence of Reliance* ....................... 13

        *3.   Reliance Can Be Presumed Under Affiliated Ute Because Plaintiffs' Claims Involve Material Omissions* .................................................................... 15

            a.   The Affiliated Ute Presumption Applies to Plaintiffs' Federal Commodities Claims ............................................................................... 15

            b.   The Affiliated Ute Presumption Applies to Plaintiffs' Common Law Fraud and Negligence Claims .............................................................. 17

    C.  The Claims Based on Defendants' Breaches of Duty Will Be Proven on a Class-Wide Basis ..................................................................................................... 18

    D.  A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of Plaintiffs' Claims ............................................................. 21

1.  *Any Individual Interest in Controlling the Prosecution of this Action is Minimal* 22

2.  *Other Related Litigation Will Not Protect the Class's Interests* ........................... 22

3.  *Litigating All of the Claims in this Forum Is the Most Just and Efficient Course of Action* .................................................................................................................. 22

4.  *A Class Action in this Case Can Be Managed Effectively* ................................... 23

5.  *The Presence of Foreign Class Members Poses No Impediment to Class Certification* ............................................................................................................. 24

    a.  Class Certification Is Not Dependent on Foreign Recognition ...................... 24

    b.  A Judgment in this Case Would Be Recognized in Relevant Jurisdictions Throughout the World .................................................................................... 26

**CONCLUSION** ..................................................................................................................... **27**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackerman v. Price Waterhouse*, 252 A.D. 2d 179, 198 (App. Div. 1st Dep't 1998)................... 17

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 154 (1972).................... 15, 16, 17

*Allapattah Servs., Inc. v. Exxon Corp.,* 188 F.R.D. 667, 677 (S.D. Fla. 1999) ........................... 11

*Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D. Ill. 1993) ....................................................................... 3

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 354 (S.D.N.Y. 2010) ............................... 17

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................... 19, 20, 23

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975) ........................................... 24

*Bresson v. Thomson McKinnon Secur., Inc.*, 118 F.R.D. 339, 343 (S.D.N.Y. 1988).................... 9

*Bruhl v. Price WaterhouseCoopers Int'l*, 257 F.R.D. 684, 696 (S.D. Fla. 2008) ....... 12, 18, 19, 20

*Bunnion v. Consol. Rail Corp.*, 1998 WL 372644, at *6, (E.D. Pa. May 14, 1998)................... 18

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 560 (E.D. Va. 2000) ................................... 11

*Collins v. International Dairy Queen*, 168 F.R.D. 668, 674 (M.D. Ga. 1996)............................ 18

*Credit Alliance Corp. v. Arthur Anderson & Co.*, 483 N.E. 2d 110, 118 (N.Y. 1985) ............... 19

*Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 132 (S.D.N.Y. 2001) .................................. 6, 22, 24

*Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989) ................................................................ 3

*Du Pont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987).................................................................... 15

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 34 (E.D.N.Y. 2008)........................ 18, 19, 21

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)...................... 5, 8

*Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 179 (E.D. Pa. 1988) . 18

*Feinberg v. Katz*, 2007 WL 4562930, at *5 (S.D.N.Y. Dec. 21, 2007)...................................... 17

*Fogarazzo v. Lehman Bros. Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005)...................................... 3

*Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005)................................... 16

*Greene v. Emersons Ltd.*, 86 F.R.D. 47, 57 (S.D.N.Y. 1980) ...................................................... 4

*Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 428 (4th Cir. 2003)................................... 18

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 569 (E.D. Mich. 2009) ................................ 21

*In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008) ...................................................... 24

*In re Arakis Energy Corp. Sec. Litig.*, 1999 WL 1021819, at \*5 (E.D.N.Y. Apr. 27, 1999) ........ 4

*In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986) .................................... 4

*In re Beacon Associates Litig.*, 2010 WL 3895582 ...................................................................... 17

*In re Bernard L. Madoff Inv. Securities LLC*, 424 B.R. 122, 142 (Bankr. S.D.N.Y. 2010) .......... 1

*In re Blech*, 187 F.R.D. 97, 106 (S.D.N.Y. 1999) .......................................................................... 6

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ........................... 7

*In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616 (N.D. Ala. 2009) ................................. 9, 12

*In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 368 (N.D. Okla. 1977)........................... 9

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 464 (E.D. Pa. 2000) ..................... 20

*In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).............. 3, 7

*In re Initial Public Offering Sec. Litig.*, 2004 WL 2297401, \*15 (S.D.N.Y. Oct. 13, 2004) ......... 5

*In re Lloyd's American Fund Trust Litig.*, 1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 6, 1998) ................................................................................................................................................... 24

*In re Lloyd's American Trust Fund Litig.*, 1998 WL 50211, at \*6 (S.D.N.Y. Feb. 6, 1998)........ 18

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996)............... 6

*In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ................................ 9

*In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ........................................ 3

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) ................... 5

*In re Sadia, S.A. Sec. Litig.*, 2010 WL 2884737, at \*7 (S.D.N.Y. July 20, 2010)........... 15, 16, 18

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 482 (2d Cir. 2008)............................. 15

*In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 172 (S.D.N.Y. 1997)................... 18

*In re Visa Check*, 280 F.3d 124, 140-41 (2d Cir. 2001) ....................................................... 21, 23

*In re Vivendi Universal, S.A. Sec. Litig.  2009 WL 855799,* at \*14 (S.D.N.Y. Mar. 31, 2009)... 24, 25

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2007) ............................................... 24

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003).................................. 6, 7

*Jenson v. Fiserv Trust Co.*, 256 Fed. App'x 924, 926 (9th Cir. 2007) ..................................... 9, 12

*King v. Club Med, Inc.*, 430 N.Y.S.2d 65, 76 A.D.2d 123, 127 (N.Y. App. Div. 1st Dep't 1980) ................................................................................................................................ 12

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) ................................................ 11, 14

*LaGrasta v. First Union Sec., Inc.*, 2005 WL 1875469, at \*12 (M.D. Fla. Aug. 8, 2005).......... 11

*Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 702 (2d Cir.1998)................................................ 15

*Lowenschuss v. Resorts Int'l, Inc.*, 181 F.3d 505, 510 (3d Cir. 1999)........................................ 11

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) .................................................. 11

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) ................................................ 8

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC.*, 446 F. Supp. 2d 163, 194-95 (S.D.N.Y. 2006)............................................................................................ 19

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993 ............................................................... 2, 5

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) ............................... 3

*Saddle Rock Partners v. Hiatt*, 2000 WL 1182793, at \*5 (S.D.N.Y. 2000) ................................ 10

*Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232, 248 (W.D. Pa. 2008)....................... 21

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ................................................. 19

*Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 302 (D. Conn. 2009).................. 11

*Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 521 (N.D. Ohio 2008)................................... 11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008) ........................ 15

*Strauss v. Long Island Sports, Inc.*, 401 N.Y.S.2d 233, 237 (2d Dep't 1978)............................. 17

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, \*4 (S.D.N.Y. Dec. 27, 2004) ......... 3

*Teachers' Ret. Sys. of La.*, 2004 WL 2997957 .............................................................................. 6

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 333 (S.D. Fla. 1996) ............................ 9, 12, 13, 16

*Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 7, 499 N.Y.S.2d 693, *aff'd*, 69 N.Y.2d 979, 516 N.Y.S.2d 652 ......................................................................................................................... 17

*Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 224 (C.D. Cal. 2003) .............. 18, 21

*Woodward v. Metro Bank*, 522 F.2d 84, 97 n.28 (5th Cir.1975) .................................................. 16

*Zupnick v. Thompson Parking Partners Limited Partnership III*, 1990 WL 113197, *3 (S.D.N.Y. Aug. 1, 1990) ................................................................................................................................ 2

## Other Authorities

*See Newberg* § 4.32, at 4-130 to 4-131 ....................................................................................... 23

## Rules

Fed R. Civ. P. 23(b)(3) ................................................................................................... 1, 8, 21, 23

Fed. R. Civ. R. 23(a) ......................................................................................................... 1, 3

Fed.R.Civ.P. 23(a)(1) .............................................................................................................. 2

Fed.R.Civ.P. 23(b)(3)(B) ....................................................................................................... 22

Fed.R.Civ.P. 23(b)(3)(C) ....................................................................................................... 22

Fed.R.Civ.P. 23(b)(3)(D) ....................................................................................................... 23

Rule 23(a)(2) ............................................................................................................................. 5

Rule 23(a)(3) ............................................................................................................................. 5

Rule 23(a)(4) ............................................................................................................................. 7

Plaintiffs Manual Bolivar ("Bolivar"), Andres Rubio ("Rubio") and Janneth Quintero (collectively, "Class Representatives"), pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, respectfully submit this Memorandum of Law in support of their motion for an order appointing them class representatives and certifying this action as a class action on behalf of a class (the "Class") consisting of all defrauded investors, all of the funds fraudulently and unlawfully misappropriated by Defendants from January 1, 2000 through August 25, 2009 (the "Class Period"), who suffered a net loss[1] of principal invested.[2]

## INTRODUCTION

This action has been brought by Plaintiffs, individually and on behalf of all of those persons (the "Class" or "Class Members") who invested funds for trading in foreign currency with Defendants Jairo Enrique Sanchez ("Sanchez") and Dilia Margarita Baez ("Baez"), through their purported corporation and/or limited liability company FIT International Group, and Defendants FIT International Group Corp. ("FIT Corp.") and Forex International Team Inc. ("Forex") (collectively "FIT"), as well as other foreign corporate entities during the Class Period. Sanchez and Baez orchestrated an international Ponzi scheme, stealing significantly in excess of $100 million from deceived investors in the United States and abroad. They executed this scheme principally through their Florida corporation, FIT Corp., and fraudulent representations concerning a nonexistent purported New York corporation and/or limited liability company, FIT

---

[1]  Net loss reflects the total cash investment made by a Class member less the total amount of any redemptions or withdrawals made by that member.  *See, e.g., In re Bernard L. Madoff Inv. Securities LLC*, 424 B.R. 122, 142 (Bankr. S.D.N.Y. 2010) (discussing the "net equity" method of identifying victims of a Ponzi scheme and calculating individual damages).

[2]  Excluded from the Class are the Defendants herein, and any entity in which the Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

International Group, in addition to at least three other corporate instrumentalities, Forex International Team Inc. (New York) ("Forex"), FIT Forex Investment Team S.A. (Colombia) and FIT Forex Investment Team AG (Switzerland), among several other front companies — all mere deceptive devices for Sanchez's and Baez's fraudulent schemes.

There is little doubt that Sanchez, Baez, FIT Corp. and Forex (along with their foreign corporate instrumentalities) defrauded investors out of millions, for which they are now facing potential criminal liability.  This action seeks to recover, on behalf of the class of defrauded investors, all of the funds fraudulently and unlawfully misappropriated by Defendants.

This case is well-suited for adjudication as a class action.  Plaintiffs and hundreds of other members of the putative Class have lost over $100 million as a result of Defendants' deceptive conduct, material omissions and misrepresentations, fraud and breaches of duty. Common evidence will demonstrate that these losses would not have occurred if Defendants had told the truth and fulfilled their duties to the Class.  Numerous common questions of law and fact exist concerning Defendants' course of conduct, which was directed uniformly at, and caused injury to, all Class members.

## ARGUMENT

**I.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a)**

### A.  The Proposed Class Is So Numerous That Joinder Is Impracticable

Certification requires that the class be so numerous that joinder of all members is impracticable.  Fed.R.Civ.P. 23(a)(1).  Joinder need not be impossible, only difficult.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[T]here is no fixed number which either compels or precludes class certification." *Zupnick v. Thompson Parking Partners Limited Partnership III*, 1990 WL 113197, *3 (S.D.N.Y. Aug. 1, 1990), and even "the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Robidoux*, 987 F.2d

at 935.  Here, counsel has knowledge of approximately 600 investors, and believes there may be more than 600 members of the proposed Class located throughout the United States and the rest of the World.  The sheer number of Plaintiffs coupled with their widely-dispersed locations makes joinder impracticable and class treatment appropriate.  *See, e.g., Zupnick*, 1990 WL 113197 at *3; *Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D. Ill. 1993).[3]

### B.  Plaintiffs' Claims Involve Common Questions of Law and Fact

The commonality requirement of Rule 23(a) is met if the claims involve questions of law or fact that are common to the class.  *See Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  Factual variations among class members' claims will not defeat the commonality requirement so long as the claims arise from a common nucleus of operative facts. *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, *4 (S.D.N.Y. Dec. 27, 2004). Provided plaintiffs can "identify some unifying thread among the members' claims," commonality is satisfied.  *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989).

Consistent with this, "[t]he commonality requirement has been applied permissively in securities fraud litigation" and is easily met "where putative class members have been injured by similar material misrepresentations and omissions."  *Fogarazzo v. Lehman Bros. Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).  As courts in this District have repeatedly held, such "course of conduct cases" are particularly well suited to class treatment because the heart of plaintiffs' claim is that defendants withheld the same material information or made the same material misrepresentations to the entire class.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000); *In re Arakis Energy Corp. Sec. Litig.*, 1999 WL 1021819, at *5 (E.D.N.Y. Apr.

---

[3]  For example, as discussed in Section II.D.5, the putative Class members are located in the

27, 1999) ("In this case, where all the class claims arise out of publicly announced, allegedly false statements, common questions of law and fact are virtually assured."); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986); *Greene v. Emersons Ltd.*, 86 F.R.D. 47, 57 (S.D.N.Y. 1980) ("Where, as here, it is alleged that a series of reports and statements containing interrelated and cumulative misleading data were issued to the investing public, a course of conduct is presented which raises questions common to all those who purchased during the period when the data was being disseminated.") [D.E. 1].

The Class Action Complaint ("Complaint") identifies numerous common issues of fact and law, all of which are amenable to class-wide proof (Complaint at ¶ 21), including without limitation the following:

a. Whether the Federal commodities laws were violated by Defendants' acts and omissions as alleged therein;

b. Whether the Racketeer Influenced and Corrupt Organizations Act was violated by Defendants' actions as alleged therein;

c. Whether Defendants omitted and/or misrepresented material facts in their uniform solicitation and concerning their management of funds from clients;

d. Whether Defendants' uniform statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

e. Whether Defendants knew or recklessly or deliberately disregarded that their uniform statements were false and misleading, omitting material information;

f. Whether Defendants breached common law fiduciary duties owed to the Class Members; and

g. The extent of damages sustained by the Class Members and the proper measure of such damages.

Because Plaintiffs' allegations implicate a common course of fraudulent conduct that

---

United States and several different countries around the world.

caused injury to all members of the putative Class, the commonality requirement of Rule 23(a)(2) is satisfied.

**C.  Plaintiffs' Claims and Defenses Are Typical of Those of the Members of the Class**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Like the test for commonality, "[t]he typicality requirement is not demanding."  *In re Initial Public Offering Sec. Litig.*, 2004 WL 2297401, *15 (S.D.N.Y. Oct. 13, 2004).

1.  The Claims of the Class Representatives are Typical

Typicality refers to the nature of the legal claims of the Class Representatives, and not to specific facts from which the claims arose or relief is sought.  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).  "Typical does not mean identical."  *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995).  In most securities actions, "a difference in the amount of damages, date, size, or manner of purchase; the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical."  *Dura-Bilt*, 89 F.R.D. at 99.  Instead, the inquiry is whether other members of the class have similar claims arising from the same course of conduct.  *Id.  See also Robidoux*, 987 F.2d at 936.  This requirement is met where "the proposed class representatives alleged that they were harmed in the same 'unitary scheme' as the rest of the class."  *In re IPO*, 2004 WL 2297401 at *21.

The Class Representatives' claims against the Defendants are typical of the claims of other Class members because their losses all derive from the same course of Defendants' conduct.  They allege, as do all Class members, that Defendants fraudulently, recklessly, negligently or in breach of various duties, misrepresented the nature and extent of their trading in

currency in the manner advertised and promoted, which, if performed as represented, would have prevented the loss of millions of dollars.  Class Representatives will prove these allegations using evidence that is common to the entire Class.  Where, as here, "the lead plaintiff alleges a common pattern of wrongdoing and will present the same evidence, based on the same legal theories, to support its claim as other members of the proposed class, courts have held the typicality requirement to be satisfied . . . ."  *Teachers' Ret. Sys. of La.*, 2004 WL 2997957 at *4.  *See also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met . . . ."); *In re Blech*, 187 F.R.D. 97, 106 (S.D.N.Y. 1999) (typicality satisfied because "plaintiffs' claims of fraud arise from the same course of conduct" as the rest of the class); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996) (typicality shown where claims "all [arose] from the same price-fixing conspiracy").

### 2.   The Class Representatives Are Not Subject to Unique Defenses

The proposed Class Representatives are not subject to unique defenses that would preclude a finding of typicality.  For example, in this case, differences in the type of investor, investment strategy, degree of investor diligence, or use of investment advisers do not create unique reliance defenses.  *See, e.g., Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 132 (S.D.N.Y. 2001) (use of investment advisors does not create unique reliance defense); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. at 282 (rejecting unique defenses argument because each method of making an investment decision – "whether by the named plaintiff, the advisor, or a computer model" – is "representative of methods used by many other investors").  Nor is this a case where unique defenses might exist because a proposed representative received material, non-public information about the investment that other members of the class did not.  *See, e.g., In re Indep.*

6

*Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481-82 (S.D.N.Y. 2002).

The limited information that was available regarding the trading company came almost exclusively from Defendants themselves and their trading agreements.  The fact that some Class Representatives may have also received advice from investment advisors or conducted their own due diligence did not give them access to material information about the Funds that other Class members did not have.  In other words, there can be "no suggestion that any of the named plaintiffs had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest."  *WorldCom*, 219 F.R.D. at 282.  Accordingly, Plaintiffs' claims and defenses satisfy the typicality requirement

### D.  Plaintiffs Satisfy the Adequacy of Representation Requirement

Rule 23(a)(4) requires that the representative parties "will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  This requirement is met if: (1) the representative plaintiffs' interests are not antagonistic to those of the remainder of the class; and (2) class counsel is qualified, experienced and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Plaintiffs propose that Plaintiffs Manual Bolivar, Andres Rubio and Janneth Quintero be the Class Representatives.  Mr. Rubio has submitted a declaration in support of this motion. See Declaration of Andres Rubio ("Rubio Decl.").  As the attached declaration demonstrates, there are no conflicts of interest between the proposed Class Representatives and members of the Class.  Rubio Decl. at ¶ 14.  The Class Representatives transferred monies to FIT Corp. pursuant to a FIT Trading Agreement for purposes of investing in foreign currency during the Class Period, and like the rest of the members of the Class, seek to maximize the recovery for victims of Defendants' unlawful conduct.  Id. at ¶¶ 2, 13.  The Class Representatives do not have any interest that is antagonistic to the interests of the Class.  Id. at ¶¶ 13, 14. As discussed *infra* in

Section II, the Class Representatives' claims are identical in material respects to the claims of all Class members and the Class Representatives will prove Defendants' liability on the basis of common facts underlying those claims.  Finally, the Class Representatives are not subject to unique defenses and their interests are fully aligned with those of the Class.  Id. at ¶¶ 2-11.

Additionally, Plaintiffs in this action have retained counsel who has prosecuted numerous securities cases and other complex class actions over the past several decades in courts throughout the country.  *See* Declaration of Dr. Gaytri Kachroo ("Kachroo Decl.") at  ¶ 15-16. Plaintiffs' Counsel has prosecuted this litigation since its inception and currently represents over two-hundred (200) investors. Id. at ¶ 3. In this capacity, Plaintiffs' Counsel has conducted an extensive investigation into the Class' claims; obtained service on the Defendants in Columbia; have obtained defaults against the Defendants; and otherwise vigorously represented the Class' interests in this complex dispute.  Id. at ¶¶ 12, 14.  Plaintiffs' Counsel is amply qualified, experienced and capable of prosecuting this litigation.  Id. at ¶¶ 15-11

## II.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact predominate over any questions affecting only individual class members and that a class action is superior to other available methods of adjudication.  Both of these requirements are met.

### A.   Common Questions of Law and Fact Predominate

Rule 23(b)(3) does not require a complete absence of any individual issues.  *See Dura-Bilt*, 89 F.R.D. at 99 ("To be sure, individual issues will likely arise in this as in all class action cases.").  Rather, it requires predominance, which entails that "some of the legal or factual questions" can be resolved through "generalized proof" and that "these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

In cases that involve a single, common fraudulent scheme, the predominance requirement is met notwithstanding that there may be questions of individualized reliance. *See Jenson v. Fiserv Trust Co.*, 256 Fed. App'x 924, 926 (9th Cir. 2007) (a Ponzi scheme presented a "center of gravity" for the fraud that predominated over individual issues); *In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 646 (N.D. Ala. 2009) ("individual issues of reliance do not predominate over questions common to the class" where the class' claims are based on a "single, common fraudulent scheme"); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 333 (S.D. Fla. 1996) (certifying a class in a case involving a Ponzi scheme, where (as here) defendants included third-party service providers because common issues predominated in spite of concerns over individualized reliance); *Bresson v. Thomson McKinnon Secur., Inc.*, 118 F.R.D. 339, 343 (S.D.N.Y. 1988) (same); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 368 (N.D. Okla. 1977) (same).  This is because such situations present an "overwhelming number of common factual and legal issues [...] common to the class" that "predominate over any questions affecting only individual members." *Walco*, 168 F.R.D. at 334.

Consistent with these decisions, class treatment is appropriate in this case.  First, as discussed below, reliance in this case can be shown on a class-wide basis.  Moreover, this case involves the type of "common nucleus of operative facts and issues with which the predominance inquiry is concerned." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).  Whether proceeding individually or as a class, Plaintiffs will present the same case-in-chief.   In either instance, Plaintiffs will seek to establish that the Defendants made the same fraudulent material misrepresentations and omissions and breached the same duties.  Plaintiffs, as well as all members of the Class, will seek to prove that Defendants' fraudulent representations induced investors to invest and maintain their investments with Defendants,

which in turn gave them the appearance of legitimacy.    Instead, Defendants merely diverted investor funds for their own personal benefit and use and directly caused Plaintiffs' multi-million dollar losses.

Accordingly, even if some aspects of reliance were addressed individually, "that would still leave intact the basic issues of defendants' liability for the alleged fraud.  Since these are common to all class members and central to plaintiff's claim, certification is warranted." *Saddle Rock Partners v. Hiatt*, 2000 WL 1182793, at *5 (S.D.N.Y. 2000).  *See also Cromer*, 205 F.R.D. at 127 (common questions predominate where "[t]he proof for the claims of misrepresentation or omission, materiality, and [ ] scienter are all based on a common nucleus of facts and a common course of conduct").[4]  Further, as discussed in Section II.B and C *infra*, reliance is not a requisite element of a number of Plaintiffs' claims, and where it is an element, it can be proven on a class-wide basis.

### B.  Reliance Will Be Proven on a Class-Wide Basis

A class action is the superior method of litigating Plaintiffs' claims.  In this case, reliance will turn on class-wide determinations because: (1) reliance can be demonstrated based on common, circumstantial evidence; (2) this case presents strong circumstantial evidence of reliance; and (3) the presumption of reliance under *Affiliated Ute* applies to Defendants' material representations.

#### 1.  <u>Circumstantial Evidence Common to All Class Members Can Be Used to Prove Reliance</u>

In the context of class certification, the rule in the Second Circuit is that "proof of

---

[4]  "[C]ourts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial, through separate jury trials if necessary."  *In re Vivendi Universal, S.A. Securities Litigation*, --- F.Supp.2d ----, 2011 WL 590915, at *58-59 (S.D.N.Y. Feb. 17, 2011) (collecting cases).

reliance by circumstantial evidence may be sufficient under certain conditions." *McLaughlin v. Am. Tobacco Co*., 522 F.3d 215 (2d Cir. 2008).  This rule reflects the commonsense proposition that courts will not reject an inference of reliance that logically flows from the facts and circumstances of a case.  *See Lowenschuss v. Resorts Int'l, Inc*., 181 F.3d 505, 510 (3d Cir. 1999) ("a trial court may infer reliance from the various facts and circumstances of a case"); *Chisolm v. TranSouth Fin. Corp*., 194 F.R.D. 538, 560 (E.D. Va. 2000) ("Fraud cannot be presumed, but reliance may be demonstrated by circumstantial or direct evidence."); *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 677 (S.D. Fla. 1999) (reliance upon false representations "may be proven by direct or circumstantial evidence").

In a variety of contexts, Federal courts have certified class actions where there was circumstantial evidence of reliance common to all class members.  *See, e.g., Klay v. Humana, Inc*., 382 F.3d 1241, 1259 (11th Cir. 2004) (affirming certification of a RICO class action where common circumstantial evidence could "lead a reasonable fact finder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' representations"); *Spencer v. Hartford Fin. Servs. Group, Inc*., 256 F.R.D. 284, 302 (D. Conn. 2009) (certifying class action alleging common law fraud because circumstantial evidence common to entire class could be used to show reliance); *Stanich v. Travelers Indem. Co*., 249 F.R.D. 506, 521 (N.D. Ohio 2008) (certifying class action where circumstantial evidence common to entire class could be used to show reliance in connection with an insurance sales fraud); *LaGrasta v. First Union Sec., Inc.*, 2005 WL 1875469, at *12 (M.D. Fla. Aug. 8, 2005) (certifying securities fraud class action "where the common issues of fact [were] quite substantial and the circumstantial evidence that [could] be used to show reliance [was] common to the whole class.") (internal quotations omitted).

11

In cases involving a single, common fraud, the facts and circumstances provide strong common evidence of reliance. *See Jenson*, 256 Fed. App'x at 926 (affirming class certification where plaintiffs were victims of an alleged Ponzi scheme and circumstantial evidence supported an inference of reliance as to all class members); *In re HealthSouth Corp. Secs. Litig.,* 261 F.R.D at 645 (certifying class in fraudulent scheme where defendants' "false statements about finances were precisely the kind of representations upon which investors regularly and routinely rely" and "probability and common sense" would support a finding of class-wide reliance).

Accordingly, where defendants make uniform statements containing material misrepresentations and omissions to an entire group of people, misrepresent the fundamental nature of an investment or of their own actions and due diligence that would protect the safety and legitimacy of that investment, thereby inducing investors to part with money that is later lost, class certification is appropriate. *See Bruhl v. Price WaterhouseCoopers Int'l*, 257 F.R.D. 684, 696 (S.D. Fla. 2008) (certifying class where "the misrepresentations relating to the NAV statements were made to the entire class" and investors would consider such information "material in deciding either to invest in the Funds, to remain invested in the Funds or to redeem their investments in the Funds"); *Walco*, 168 F.R.D. at 337 (certifying RICO and common law fraud claims over reliance objections where defendants induced plaintiffs to invest in a Ponzi scheme using uniform fraudulent offering documents); *King v. Club Med, Inc.*, 430 N.Y.S.2d 65, 76 A.D.2d 123, 127 (N.Y. App. Div. 1st Dep't 1980) (rejecting defendants' objection that individual reliance issues precluded class treatment and certifying class involving uniform misrepresentation).

The *Walco* case is particularly instructive, which involved claims against the actual operators of a Ponzi scheme.  In addressing plaintiffs' RICO and common law fraud claims, the

court found that plaintiffs would prove the existence of the same "common fraudulent scheme" and would do so using basically the same evidence:

> Minor differences in misrepresentations are to be expected in a fraudulent scheme that lasted several years and involved numerous transactions and several players, as has been alleged by Plaintiffs in their Complaint. The gist of the confirmations is that they all allegedly falsely confirmed that the fictitious invoices represented actual sales or purchases of products; they all misrepresented or omitted the same material information. Plaintiffs' Complaint lists confirmation upon confirmation where it is consistently alleged that the [third-party] Confirmer Defendants made false confirmations of nonexistent transactions.

*Walco*, 168 F.R.D. at 336-37. The *Walco* court further specifically recognized that class treatment of these claims was appropriate without resort to presumptions of reliance. *Id*. at 335.

## 2. This Case Presents Strong Circumstantial Evidence of Reliance

The considerations discussed above apply even more directly to the present case. Here, the Defendants prepared the offering documents and/or trading agreements which explained the nature of the investments and their own purported actions and due diligence to protect those investments. In addition, over the course of their purported trading in the Forex market, Defendants produced false and misleading client account statements, purporting to show trades and profits, with stable, consistent returns over a sustained period of time, regardless of volatility in the market. In fact, these statements were false and Defendants had not traded in the currency and amounts they had claimed, but were merely siphoning money from clients for their own personal benefit and use. Generalized proof will establish by compelling evidence that, when making their investment decisions, all Class members relied on information (1) describing the currency trading; (2) describing the due diligence and related actions that Defendants were supposedly performing to protect those investments; and (3) stating how much the investments were worth. Further, Sanchez and Baez, directly and through their various marketing and

13

promoting entities, including Forex, fraudulently marketed their fictitious Forex trading company, FIT Group, and promoted false and misleading invalid, unenforceable trading agreements with FIT Group to investors. They showed investors false statements, promising consistent, profitable monthly returns of approximately 3-4% over several years. Defendants promised investors that their investments were protected because FIT had stop loss measures in place to limit any negative losses on investments. Defendants had actual knowledge that these statements were false when they made them and made such statements intentionally so that the Class Members would rely upon them. All of this information was false because in reality no investments were taking place and Defendants had no reasonable basis to believe that they were. Common evidence will demonstrate that all Class members – regardless of their exact understanding of the foreign currency trades - relied on the representations that showed profitable foreign currency trades, and increasing investment returns over a consistent period. *See* e.g.Kachroo Decl. at ¶ 14, Rubio Decl. at ¶¶ 2-9, 11

Likewise, circumstantial evidence will also demonstrate Plaintiffs' reliance on representations made by the Defendants showing consistent, stable returns to investors for years, in spite of significant market volatility. Indeed, FIT used these false returns to solicit new clients and additional funds, claiming that their investment strategy was reliable and profitable. Further, internet access to false and misleading electronic monthly statements that purported to show profitable foreign currency trades, and increasing investment returns was provided by FIT to investors through www.forexfit.com and www.fitcolombia.com. *See* Rubio Decl. at ¶ 5

Accordingly, class certification is appropriate because common evidence could "lead a reasonable fact finder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on defendants' representations." *Klay*, 382 F.3d at 1259.

14

3. Reliance Can Be Presumed Under *Affiliated Ute* Because Plaintiffs' Claims Involve Material Omissions

    a. *The Affiliated Ute Presumption Applies to Plaintiffs' Federal Commodities Claims*

Where there is "an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008) (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 154 (1972)). "Instead, if the plaintiff proves that the facts withheld are material in the sense that a reasonable investor might have considered them important, reliance will be presumed." *Du Pont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987) (internal quotations omitted). This materiality standard is satisfied where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 482 (2d Cir. 2008). *See Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 702 (2d Cir.1998) (omitted fact is immaterial if information is "so basic that any investor could be expected to know it"); *In re Sadia, S.A. Sec. Litig.*, 2010 WL 2884737, at *7 (S.D.N.Y. July 20, 2010) (material facts include those "which may affect the desire of investors to buy, sell, or hold the company's securities").

Here, the Defendants' statements omitted the important material facts that the Defendants had all the applicable required government approvals, licenses, and permits, including but not limited to, if applicable, registration with the NFA as a commodity trader advisor (CTA). In fact, neither FIT International Group nor any other Defendant had any proper license or government approval to solicit or invest client funds. Further, Sanchez and Baez claimed to execute a proprietary Forex trading strategy through FIT International Group, a purported corporation, and at other times a purported limited liability company, organized under the laws of the State of

New York.  No such company was ever incorporated, as a corporation or limited liability company, in New York.  Only Defendant Forex was incorporated in New York, and like FIT Switzerland and FIT Colombia, was merely a marketing and promotional instrumentality used to defraud investors and solicit funds for the scheme.  Indeed, "FIT International Group," a purported New York corporation or limited liability company, was merely a sham to avoid any legitimate, enforceable contractual relationships with investors.  All of the transactions supposedly executed by FIT International Group were conducted by other real corporate entities and by Sanchez and Baez.

Similar omissions have been found sufficiently material for the purposes of the *Affiliated Ute* presumption.  *See, e.g., Walco*, 168 F.R.D. at 331-32 (applying *Affiliated Ute* presumption where omitted disclosures regarding the checkered pasts of the insiders running the purported investment scheme "not only would have [alerted] investors to their suspect investment schemes, but may have prevented the fraud itself").  Here, had Defendants revealed that neither FIT International Group nor any other Defendant had any proper license or government approval to solicit or invest client funds, it is highly likely that no Class members would have invested in the scheme and lost money in the scheme.[5]

Even where, as here, "plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption."  *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005); *In re Sadia, S.A.*, 269 F.R.D. at 316 (applying *Affiliated Ute* presumption in "mixed" case involving

---

[5]   In addition, it is appropriate to apply a presumption of reliance to this case given the existence of fiduciary duties owed by certain Defendants to Plaintiffs.  *See, e.g., Woodward v. Metro Bank*, 522 F.2d 84, 97 n.28 (5th Cir.1975) ("A duty of disclosure may exist where any person possesses inside information, or where the law imposes special obligations, as for accountants, brokers, or other experts, depending on the circumstances of the case.").

both misrepresentations and omissions); *In re Beacon Associates Litig.*, 2010 WL 3895582, at *19 (same).  Because the *Affiliated Ute* presumption of reliance applies to Plaintiffs' Federal commodities claims, reliance can be shown on a class-wide basis and is no barrier to class certification.

> b.  *The Affiliated Ute Presumption Applies to Plaintiffs' Common Law Fraud and Negligence Claims*

The *Affiliated Ute* presumption also applies to Plaintiffs' common claims of fraud and negligence.  New York courts have regularly applied the *Affiliated Ute* presumption to common-law fraud and negligent misrepresentation claims involving a material omission.  *See, e.g., Ackerman v. Price Waterhouse*, 252 A.D. 2d 179, 198 (App. Div. 1st Dep't 1998) (applying *Affiliated Ute* presumption to negligent misrepresentation claims) (citing *Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 7, 499 N.Y.S.2d 693, *aff'd*, 69 N.Y.2d 979, 516 N.Y.S.2d 652; *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 354, 357 (S.D.N.Y. 2010) (discussing the "unwitting perpetuation of error" that gave rise to the doctrine of Martin Act preemption).[6]  Thus, the *Affiliated Ute* presumption applies to Plaintiffs' common law fraud and negligent

---

[6] *Cf. e.g., Feinberg v. Katz*, 2007 WL 4562930, at *5 (S.D.N.Y. Dec. 21, 2007) ("It is doubtful that New York courts would apply to a common law fraud claim that presumption of reliance found in *Affiliated Ute* and other securities cases."); *Waksman v. Cohen*, 2002 WL 31466417, at *5 (S.D.N.Y. Nov. 4, 2002) (finding *Affiliated Ute* presumption inapplicable to common law fraud claims and noting "New York courts have chosen not to abandon the requirement of reliance in common law fraud cases").  However, these cases ignore the more current, more pertinent and better reasoned weight of authority, discussed *infra,* which holds otherwise.  The decisions that reject one of the *Affiliated Ute* theories of reliance have their genesis in *Strauss v. Long Island Sports, Inc.,* 401 N.Y.S.2d 233, 237 (2d Dep't 1978).  In *Strauss*, the appellate division merely declined to apply the fraud-on-the-market theory in an advertising fraud case and noted in passing that *Affilated Ute* was clearly inapplicable because *Strauss* did not involve material omissions.  The court then opined that federal securities fraud cases are "very much distinguishable from common-law fraud cases."  Courts in this District have repeatedly seized upon this language from *Strauss* in holding that the *Affiliated Ute* presumption cannot apply to common law claims.

misrepresentation claims.  The omissions by the Defendants are discussed above.  Accordingly, the Defendants' omissions and/or misrepresentations were sufficiently material to "affect the desire of investors to buy, sell, or hold" investments in the scheme.  *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. at 308.

### C.  The Claims Based on Defendants' Breaches of Duty Will Be Proven on a Class-Wide Basis

Plaintiffs' claims are ideally suited for class treatment because such claims focus on the "the conduct of the defendants, not the plaintiffs."  *Bunnion v. Consol. Rail Corp.*, 1998 WL 372644, at *6, (E.D. Pa. May 14, 1998).  *See, e.g., Bruhl*, 257 F.R.D. at 698 (granting class certification on breach of fiduciary duty claims where defendants owed same duty to each class member and breach could be established on class-wide basis); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 34 (E.D.N.Y. 2008) (granting class certification on unjust enrichment and breach of contract claims); *Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 224 (C.D. Cal. 2003) (granting class certification on unjust enrichment claims); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 172 (S.D.N.Y. 1997) (granting class certification on pendant state claims including negligence and breach of fiduciary duty in securities fraud action).[7]  All of these claims will require Plaintiffs to demonstrate that each Defendant breached

---

[7] *See also In re Lloyd's American Trust Fund Litig.*, 1998 WL 50211, at *6 (S.D.N.Y. Feb. 6, 1998) (granting class certification on breach of fiduciary duty claims); *Collins v. International Dairy Queen*, 168 F.R.D. 668, 674 (M.D. Ga. 1996) (granting class certification on breach of contract and breach of fiduciary duty claims where franchisees alleged they were all victims of the same fraudulent scheme); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 179 (E.D. Pa. 1988) (granting class certification on pendant state law claims of breach of contract and breach of fiduciary duty in securities fraud action); *Gunnells v. Healthplan Services, Inc*., 348 F.3d 417, 428 (4th Cir. 2003) (affirming class certification on third-party breach of contract claim because all relevant questions of law and fact were "common to all potential class members, and [did] not require any individualized inquiry").  *See also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ("[A]ctions that involve form or

a duty to the Class members and that such breach was the proximate cause of Plaintiffs' losses. As discussed below, the common evidence that will be used to establish these elements outweighs any individualized issues.

First, Defendants are alleged to have breached common duties owed to all members of the Class. Class-wide evidence will demonstrate that each Defendant was in a "superior position or [possessed] superior access to confidential information" and, therefore, Defendants were required to "act for or to give advice for the benefit of [Plaintiffs] upon matters within the scope of the relation." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 441 (S.D.N.Y. 2010) (quoting *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC.*, 446 F. Supp. 2d 163, 194-95 (S.D.N.Y. 2006)). In this case, a duty owed to one plaintiff is a duty owed to all, because "[e]ach of the claims arise from the same alleged scheme or course of conduct, and the [Defendants] uniformly represented their duties to Plaintiffs through the offering materials." *Bruhl*, 257 F.R.D. at 698.

The Defendants owed a duty of care to the Class based on their roles as officers, directors and majority shareholders respectively. Plaintiffs can demonstrate on a class-wide basis the requisite privity necessary to establish a duty of care. *See Credit Alliance Corp. v. Arthur Anderson & Co.*, 483 N.E. 2d 110, 118 (N.Y. 1985). Specifically, Plaintiffs can show on a class-wide basis that (1) Defendants were aware that their statements were to be used for a particular purpose; (2) in furtherance of which the class members were intended to rely; and (3) linking conduct which evinces Defendants' understanding of the class members' reliance. Each of these factors, which focus on Defendants' own actions and understanding, will be demonstrated on the

---

uniform contracts have been recognized as being well-suited for treatment as a class action."); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 34 (E.D.N.Y. 2008) (granting class certification on breach of contract claim).

basis of class-wide proof.

  <u>Second</u>, the Class will demonstrate that each Defendant breached duties owed to the Class by engaging in a foreign currency exchange and failing to trade in the manner advertised and promoted, merely diverting client funds for their own personal benefit and use, and to promote their fraud.  In addition, Defendants breached their fiduciary duties to Plaintiffs, and members of the Class, by failing to segregate client funds, as promised, engaging in self-dealing in certain transactions, falsely reporting their trading activity and the status of clients' accounts as well as misappropriating client funds.  Further, Defendants breached their duty of care to Plaintiffs, and the members of the Class, by holding positions without any protection against losses in a period of significant decline.  Defendants failed to sell those foreign currency positions at a reasonable and prudent time to prevent losses.  Defendants failed to put in place stop-loss or stop-limit orders to prevent unreasonable losses.  Defendants failed to purchase put options or sell futures contracts to limit exposure to unreasonable risks of loss in the foreign currency positions.  Evidence regarding the steps Defendants did and did not take will be identical for each Class member.  *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 464 (E.D. Pa. 2000) ("[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs.").[8]

  <u>Third</u>, common proof will demonstrate proximate cause in that the Defendants made

---

[8]   Likewise, Plaintiffs' claims against the Defendants for fraud do not require individualized proof.  *See Bruhl*, 257 F.R.D. at 698 ("Class certification of the claims for aiding and abetting a breach of a fiduciary duty is appropriate because none of the claim's elements requires reliance or any other factor unique to each class member.").  The Class may establish these claims based on a common showing that the Defendants made uniformly false statements to Class Members in order to solicit their investments through FIT Group.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442-43. (S.D.N.Y. 2010)

uniformly false statements to Class Members in order to solicit their investments through FIT Group.  Further, the Defendants purportedly had all the applicable required government approvals, licenses, and permits, including but not limited to, if applicable, registration with the NFA as a commodity trader advisor (CTA).  In fact, neither FIT Group nor any other Defendant had any proper license or government approval to solicit or invest client funds.  In any event, Plaintiffs' claims in this regard will involve class-wide evidence and thus class treatment is appropriate.

As result of Defendants' fraudulent conduct and breaches of duty, the Defendants were unjustly enriched at Plaintiffs' expense.  Unjust enrichment can also be proven on a class-wide basis.  Where, as here, the underlying theory supporting the unjust enrichment claim is the same for all Class members, class certification is appropriate.  *See, e.g., Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 569 (E.D. Mich. 2009) (granting class certification on unjust enrichment claim based on "a systematic scheme to overcharge individuals"); *Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232, 248 (W.D. Pa. 2008) (same); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 34 (E.D.N.Y. 2008) (granting class certification on unjust enrichment claim); *Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 224 (C.D. Cal. 2003) (same).

Finally, the damages suffered by each Class member are readily ascertainable based on each Class members' net losses.  These damages can be ascertained by reference to Defendants' records and present no obstacle to class certification.  *See In re Visa Check*, 280 F.3d 124, 140-41 (2d Cir. 2001) (individualized damages do not preclude class certification).

### D.  A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of Plaintiffs' Claims

Rule 23(b)(3) also requires the Court to find that a class action is superior to other possible methods of fairly and efficiently resolving the controversy.  In determining whether the

superiority requirements of Rule 23(b)(3) are met, the Court must consider the following factors: (1) the interest of members of the Class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning this controversy already commenced by potential Class members; (3) the desirability of concentrating the litigation of the claims in this forum; and (4) the difficulties likely to be encountered in the management of a class action.  Each of these factors here weights strongly in favor of class certification.

### 1.   Any Individual Interest in Controlling the Prosecution of this Action is Minimal

The sheer scope and complexity of this controversy would make individual litigation difficult for the vast majority of Class members.  Separate actions would also "risk disparate results among those seeking redress, […] encourage a race to judgment given the limited funds available to fund recovery here, […] exponentially increase the costs of litigation for all, and […] be a particularly inefficient use of judicial resources."  *Cromer*, 205 F.R.D. at 133.  Apart from a single action in this Court, there is no indication that Class members – let alone a significant number of Class members – are interested in individually controlling the prosecution of separate actions.

### 2.   Other Related Litigation Will Not Protect the Class's Interests

The extent of other litigation concerning the same controversy overlaps with the first factor and also militates in favor of class certification.  Fed.R.Civ.P. 23(b)(3)(B).

### 3.   Litigating All of the Claims in this Forum Is the Most Just and Efficient Course of Action

The third superiority factor considers "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed.R.Civ.P. 23(b)(3)(C).  For a number of reasons, this litigation should continue to proceed in the Southern District of New York.

First, litigating this dispute in one forum – rather than in numerous courts throughout the

world – is the most efficient method of resolving these claims.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), at 417-418.  Second, this Court has presided over this action for over two years and is already deeply involved in the legal issues and the factual circumstances.  Finally, all Defendants are subject to the Court's jurisdiction.  In the absence of a class action in New York, many Plaintiffs would be unable to obtain redress from all of the Defendants because they are unlikely to have access to an alternative forum where all Defendants would be subject to jurisdiction.  These factors weigh strongly in favor of litigating Plaintiffs' claims in this Court as a class action.

4.   A Class Action in this Case Can Be Managed Effectively

The final factor asks the Court to consider "the difficulties likely to be encountered in the management of a class action."  Fed.R.Civ.P. 23(b)(3)(D).  While this is a complex case, its manageability is no more challenging than numerous other complex class actions regularly heard in Federal courts.  Management of this case as a class action would not be so difficult as to render individual actions a better alternative and this weighs in favor of class certification.  *See Newberg* § 4.32, at 4-130 to 4-131 ("As has been noted with the predominance test, Rule 23(b)(3) permits a class denial for lack of superiority only when other available methods for the fair and efficient adjudication of the controversy actually exist.").  Additionally, under Second Circuit caselaw, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule."  *In re Visa Check*, 280 F.3d at 140 (internal quotation marks and citation omitted).  And if manageability concerns were to arise for some reason later in the case, they may be dealt with through such tools as subclassing, bifurcation, altering or amending the class definition and use of special masters.  *Id.* at 141.  In sum, whatever complexities may arise in handling the claims here in a single class action pale in comparison to any alternative.

5.   <u>The Presence of Foreign Class Members Poses No Impediment to Class Certification</u>

The fact that the proposed Class includes a number of members from foreign countries in no way detracts from the superiority of proceeding as a class action.  As noted above, a class action provides the fairest, most efficient method for litigating Plaintiffs' claims.  It also provides the only real opportunity for a global resolution of this dispute.  Furthermore, this Court should certify the proposed Class because Plaintiffs reside in countries that are "more likely than not" to recognize an American judgment.  *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2007); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008).

a.   *Class Certification Is Not Dependent on Foreign Recognition*

As a threshold matter, U.S. courts do not typically abstain judging a case simply because a foreign court might not recognize or enforce that judgment.  *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975).  Moreover, even if it is uncertain whether a class action judgment might be enforced abroad, it is merely a factor weighing against a finding of superiority.  *In re Alstom SA Sec. Litig.,* 253 F.R.D. at 282.

> The Court does not treat Vivendi's concerns lightly, but the hypothetical possibility of less than complete res judicata effect is not dispositive in assessing whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."

*In re Vivendi Universal, S.A. Sec. Litig.  2009 WL 855799,* at *14 (S.D.N.Y. Mar. 31, 2009); *Cromer*, 205 F.R.D. at 135 ("Even where all the available evidence indicates that foreign plaintiffs who lose in the United States will be able to sue the defendant a second time in their own country, a class action may remain the superior means for litigating the dispute . . . ."); *In re Lloyd's American Fund Trust Litig.*, 1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 6, 1998) (superiority met despite uncontroverted evidence that plaintiffs would be able to bring a second

lawsuit in five foreign countries if the defendants prevailed at trial).

Moreover, there will always be a possibility of duplicative litigation as long as potential class members are given the opportunity to opt out. Yet courts do not base class certification on whether some percentage of the class might opt-out. In similar fashion, the possibility that a small percentage of the Class might not formally opt-out, but might seek to bring individual actions is not a reason for denying class certification or carving out residents of certain nations from the Class. Moreover, even countries that will not recognize a U.S. judgment are likely to find that Class members who affirmatively participated in the claims process and waive their rights are bound by the settlement or judgment. The more favorable the settlement or judgment, the greater the probability that class members will not opt-out and will submit proofs of claim.

As a practical matter, the likelihood that absent Class members would file individual actions after a decision in favor of Defendants is miniscule. Foreign Class members would have to bear their own legal costs and most likely post bonds for expected costs. They would not necessarily have the benefit of U.S. discovery and in many cases would have to make their case on the basis of documentary evidence in their possession. If they lost, such individual plaintiffs would be responsible in most countries for indemnifying Defendants for their legal expenses and costs. *In re Vivendi*, 2009 WL 855799, at *14 ("there would be substantial disincentives to initiating 'second bite' litigation, not the least of which would be the adverse decision in this case following full discovery unavailable in France, the risk that the shareholder would lose again and, this time, be required to pay Vivendi's counsel fees"). Moreover, even in countries that did not recognize the preclusive effect of a U.S. class action judgment or settlement, those courts are likely to give substantial weight to a U.S. judgment in favor of the Defendants. Thus, those individual plaintiffs would face an uphill battle. Furthermore, Defendants might not have

25

assets to satisfy a judgment in the home countries of the absent class members.  Thus, foreign plaintiffs would have to bring enforcement proceedings abroad in countries where the Defendants could invoke the U.S. class action judgment as a defense to the enforcement actions. Thus, concerns about *res judicata* are more academic than practical given the facts and circumstances of this case.

> ### b. A Judgment in this Case Would Be Recognized in Relevant Jurisdictions Throughout the World

Investors in the FIT scheme are predominantly from Colombia (approximately 68%) and the USA (approximately 23%). Kachroo Decl. at ¶ 12.  As explained in the Declaration of Juan Manuel Díaz Guerrero, ("Diaz Guerrero Decl."), a judgment in this case is likely to be enforceable in Colombia without re-examination of the merits, and Colombia will likewise recognize and enforce the same.  Diaz Guerrero Decl. at ¶ 5.  As such, countries representing (at a minimum) 90% of investors, measured by both numbers and losses incurred, are likely to recognize a judgment entered in this case.

There are also Class members from a number of other countries, which comprise only a small fraction of Class members and/or Class losses.  These countries would nevertheless recognize a U.S. class action judgment.  Spain, Italy, Germany and the UK, to name a few, are either members of the European Community or signatories to the Lugano Treaty, facts which make recognition more likely than not.  Absent class members are also unlikely to file second-bite litigation in their home countries because of the problems discussed *infra* at 5a with legal fees, loser-pay rules, delays, problems of obtaining jurisdiction over non-residents, and inability to locate assets with which to satisfy a judgment.

Accordingly, a judgment rendered by this court would more likely than not be enforceable in any relevant jurisdiction.

26

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

October 31, 2014                                    Respectfully submitted,

                                                    KACHROO LEGAL SERVICES, P.C.


                                                    /s/ Dr. Gaytri D. Kachroo
                                                    Dr. Gaytri D. Kachroo (#4038915)
                                                    245 Park Avenue
                                                    24th Floor
                                                    New York, NY 10167
                                                    (857) 829-3041
                                                    (617) 864-1125 (fax)
                                                    gkachroo@kachroolegal.com


                                                    *Attorneys for Plaintiffs*