UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 14, 2015

MANUEL BOLIVAR, ANDRES RUBIO,
and JANNETH QUINTERO, individually and
on behalf of all those persons similarly
situated,

                          Plaintiffs,

                - against -

FIT INTERNATIONAL GROUP CORP.,
FOREX INTERNATIONAL TEAM INC.,
JAIRO ENRIQUE SANCHEZ, and
DILIA MARGARITA BAEZ,

                          Defendants.

**ORDER**

12 Civ. 781 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiffs Manuel Bolivar, Andres Rubio, and Janneth Quintero

seek damages on behalf of themselves and a putative class against Defendants Jairo Enrique

Sanchez ("Sanchez"), Margarita Baez ("Baez"), FIT International Group Corp., and Forex

Investment Team Inc., for violations of Federal commodities laws and the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), fraud, common law tort and quasi-contract claims.

Plaintiffs allege that Defendants fraudulently induced them to invest funds in their operations,

purportedly for trading in foreign currency. Plaintiffs claim that, in reality, Defendants were

conducting an international Ponzi scheme. (See Cmplt. ¶¶ 1-5, 26-39)

          Plaintiffs now move under Fed. R. Civ. P. 23 for certification of a class consisting

of all investors who invested funds for trading in foreign currency with Defendants Sanchez and

Baez through their purported corporation and/or limited liability company FIT International

Group, and through Defendants FIT International Group Corp. and/or Forex Investment Team

Inc. (collectively "FIT"), as well as certain other foreign corporate entities, between January 1, 2000 and August 25, 2009 inclusive (the "Class Period"), who suffered a net loss of principal invested in the scheme. (Motion to Certify Class, Dkt. No. 28) Plaintiffs also move for an order appointing them as class representatives. Defendants have not opposed class certification. For the reasons stated below, Plaintiffs' motion will be granted.

## BACKGROUND

In this action, Plaintiffs allege that Sanchez and Baez orchestrated an international Ponzi scheme through which they fraudulently obtained more than $100 million from investors in the United States and abroad. (Cmplt. ¶ 3) Sanchez and Baez allegedly executed this scheme through their Florida corporation, FIT Corp., and through several other entities, including FIT International Group, Forex International Team Inc. (New York), FIT Forex Investment Team S.A. (Colombia), and FIT Forex Investment Team AG (Switzerland). (Cmplt. ¶ 3)

Plaintiffs allege a common course of wrongful conduct by the Defendants involving a series of false representations and material omissions from January 1, 2000 through August 25, 2009. (Cmplt. ¶¶ 16, 22-64) Plaintiffs claim that the Defendants – in offering documents, trading agreements, and advertising and promotional material – fraudulently, recklessly, negligently or in breach of various duties, misrepresented the nature and extent of their trading in currency, loss prevention techniques, and due diligence. (Cmplt. ¶¶ 29, 31-33, 35-37, 60, 66-69, 71-74, 87-91, 98-108, 110-112) As part of their fraudulent scheme, Defendants also allegedly produced false and misleading client account statements purporting to show trades and profits with stable, consistent returns over a sustained period of time, regardless of volatility in the market. (Cmplt. ¶¶ 36-37) Plaintiffs claim these account statements were false and that Defendants had not traded in the currency and amounts they had claimed, but were

2

instead siphoning money from clients for their own personal benefit and use. (Cmplt. ¶¶ 33-35)

Plaintiffs now move, pursuant to Rule 23 of the Federal Rule of Civil Procedure, to certify a class (the "Class" or "Proposed Class"), comprised of all investors who invested funds for trading in foreign currency with Defendants Sanchez and Baez through their purported corporation and/or limited liability company FIT International Group; Defendants FIT International Group Corp. and/or Forex Investment Team Inc., as well as other foreign corporate entities, between January 1, 2000 and August 25, 2009 inclusive who suffered a net loss of principal invested in the scheme.[1] (Motion to Certify Class, Dkt. No. 28) This Court finds that the Proposed Class satisfies all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b).

## DISCUSSION

## I. STANDARD OF REVIEW

To certify the Proposed Class, Plaintiffs must satisfy all four of the requirements of Rule 23(a) and the relevant portions of Rule 23(b)(3). See In re Livent Noteholders Sec. Litig., 210 F.R.D. 512, 514 (S.D.N.Y. 2002) ("Livent").

To meet Rule 23(a)'s prerequisites, Plaintiffs must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that Plaintiffs demonstrate that common

---

[1] Excluded from the Class definition are the Defendants, and any entity in which the Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries, and/or assigns of any such individual or entity. (Cmplt. ¶ 16; Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Pltfs.' Mem.") at 1)

questions of law or fact "predominate over any questions affecting only individual members," and that maintaining a class action "is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3).

Trial courts are given substantial discretion in determining whether to grant class certification, because "'the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted.'" In re Nigeria Charter Flights Contract Litig., 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (quoting In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001) ("Sumitomo III") (alteration in original)). The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this that involve alleged manipulation of public markets, to maximize the benefits to the public provided by class actions. See In re Sumitomo Copper Litig., 182 F.R.D. 85, 88-89 (S.D.N.Y. 1998) ("Sumitomo I"); see also In re Sumitomo., 194 F.R.D. 480, 481 (S.D.N.Y. 2000) ("Sumitomo II"). As the Second Circuit stated in Green v. Wolf Corp., "'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" 406 F.2d 291, 298 (2d Cir. 1968) (quoting Esplin v. Hirshi, 402 F.2d 94, 99 (10th Cir. 1968)).

## II.   RULE 23(a) REQUIREMENTS

### A.   Numerosity

To meet the requirements of Rule 23(a)(1), "the class must be so large that joinder of all members would be impracticable." Sumitomo II, 194 F.R.D at 482 (citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992)). Although precise calculation of

the number of potential class members is not required, the Second Circuit has observed that "'numerosity is presumed at a level of 40 members.'" In re Vivendi Universal, S.A. Sec. Lit., 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (quoting Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), cert. denied, 515 U. S. 1122 (1995)) ("Vivendi").

Here, during the Proposed Class Period, approximately 600 investors of the Proposed Class invested with Defendants. Accordingly, Plaintiffs clearly meet the numerosity requirement. (See Cmplt. ¶ 17; Pltfs.' Mem. at 2-3.)

**B.    Commonality of Law or Fact Questions**

Rule 23 (a)(2) requires plaintiffs to demonstrate that common issues of law or fact affect all class members, a requirement that has been characterized as a "low hurdle." See Sumitomo II, 194 F.R.D at 482 (quoting In re Prudential Sec. Inc. Lit., 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)).

Common questions of law and fact exist in this proceeding. Where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied. See, e.g., Vivendi, 242 F.R.D. at 84. Here, the claims of the Proposed Class arise from a common course of conduct by Defendants, and Plaintiffs specifically allege certain actions and statements by the Defendants that were misleading with respect to material facts, and that led to the concealment of the Ponzi scheme. Furthermore, there are numerous issues of law and fact that are common to the Proposed Class, including: (1) whether Federal commodities laws were violated by Defendants' acts and omissions; (2) whether the RICO Act was violated by Defendants' actions; (3) whether Defendants omitted and/or misrepresented material facts in their uniform solicitation and concerning their management of client funds; (4) whether Defendants' uniform statements

omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (5) whether Defendants knew or recklessly or deliberately disregarded that their uniform statements were false and misleading, omitting material information; (6) whether Defendants breached common law fiduciary duties owed to the Class; and (7) the extent of damages sustained by the Class and the proper measure of such damages. (Cmplt. ¶ 21)

Because Plaintiffs allege a common course of fraudulent conduct, the commonality requirement is satisfied.

### C.    **Typicality**

Rule 23(a)(3) requires that Plaintiffs' claims be typical of the class. "'Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Sumitomo I, 182 F.R.D. at 94 (quoting In re Drexel, 960 F.2d at 291).

Here, Plaintiffs allege that "all Class Members were similarly affected by Defendants' wrongful conduct and have sustained damages as a result of Defendants' unlawful activities." (Cmplt. at 5) Plaintiffs argue that they will use common evidence to prove that Defendants "fraudulently, recklessly, negligently or in breach of various duties, misrepresented the nature and extent of their trading in currency in the manner advertised and promoted, which, if performed as represented, would have prevented the loss of millions of dollars." (Pltfs.' Mem. at 5-6) Furthermore, Plaintiffs argue that individual members of the Class will not be subject to unique defenses, because the limited information available regarding the trading company came almost exclusively from Defendants and their trading agreements. (Pltfs.' Mem. at 6-7)

Plaintiffs have demonstrated that the Proposed Class members' claims satisfy the

typicality requirement of Rule 23(a)(3).

### D.     Adequacy

Rule 23(a)(4) requires that the representatives of the parties will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the lead plaintiffs' counsel must be "qualified, experienced, and generally able to conduct the proposed litigation," and the class representatives must not have interests that conflict with the class members' interests. Livent, 210 F.R.D. at 516-17 (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 515 (S.D.N.Y. 1996). Both requirements are satisfied here.

Plaintiffs' attorneys have vigorously pursued these claims to date and have adequately prosecuted numerous securities cases and other complex actions, including class actions arising from Ponzi schemes. (Declaration of Gaytri Kachroo (Dkt. No. 30) ¶ 15) Therefore, Plaintiffs' counsel is qualified for the purposes of Rule 23(a)(4). Moreover, Plaintiffs do not have any interests that are antagonistic to the interests of the Class. (Pltfs. Mem. at 7-8; Declaration of Andres Rubio (Dkt. No. 31) ¶ 14)

Accordingly, Plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

### III.     RULE 23(b)(3) REQUIREMENTS

In addition to satisfying Rule 23(a), Plaintiffs must establish that this action may be maintained as a class action under Rule 23(b). Plaintiffs seek to certify the Proposed Class pursuant to Rule 23(b)(3), which provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "A class certified pursuant to Rule 23(b)(3) is sometimes referred to as an 'opt-out' class because Rule 23(c)(2) mandates that

members of a class certified under Rule 23(b)(3) be afforded an opportunity to 'request exclusion' from that class." Vivendi, 242 F.R.D. at 90. Should the Court certify the Proposed Class, any investor – foreign or domestic – who does not opt out of the class "is bound by the final disposition of the case." Id.

### A. Predominance Requirement

The predominance requirement is a more demanding standard than the commonality requirement and is satisfied if the "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id. (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)). The predominance requirement is "readily met in certain cases alleging . . . securities fraud." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

Plaintiffs argue that (1) reliance will be demonstrated based on common, circumstantial evidence, and that Plaintiffs and class members relied on core misrepresentations and omissions by Defendants; and (2) the presumption of reliance under Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 154 (1972), applies to Defendants' material omissions. (Pltfs. Mem. at 10-18) The Court concludes that, even absent the Affiliated Ute presumption of reliance, common questions of law and fact clearly predominate over any individual issues. As has been noted under similar circumstances, even assuming that certain "communications to class members may not have been uniform, they allegedly were uniformly misleading. The variations are therefore immaterial and will not defeat class certification." Bresson v. Thomson McKinnon Sec. Inc., 118 F.R.D. 339, 343 (S.D.N.Y. 1988).

The Court concludes that questions of law and fact common to the Proposed Class

predominate over any questions affecting only individual members. Plaintiffs' claims arise out of Defendants' alleged fraudulent conduct, which was directed at all investors. Plaintiffs have also alleged a series of false and misleading statements and omissions by Defendants, in violation of federal law, which Plaintiffs assert affected all investors. The critical issues for establishing liability in this case include whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured members of the Class. Plaintiffs will likely rely on similar evidence in establishing each of the foregoing elements, and common issues therefore predominate over individual issues. See, e.g., In re Beacon Assocs. Lit., 282 F.R.D. 315, 328-31 (S.D.N.Y. 2012) (applying Affiliated Ute presumption of reliance to certify class of investors in funds that invested assets with Bernard Madoff).

Accordingly, Plaintiffs have satisfied the predominance requirement.

**B.    Superiority Requirement**

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication. See Fed. R. Civ. P. 23 Advisory Committee Notes, 1966 Amendment, 28 U.S.C.A. Fed. R. Civ. P. 23 ("Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."). Rule 23(b)(3) identifies several factors to

consider in determining whether a class action is in fact "superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "As courts have frequently noted, class action treatment is particularly appropriate when plaintiffs seek redress for violations under the securities laws." In re Vivendi, 242 F.R.D. at 91 (collecting cases).

Courts properly consider res judicata concerns when evaluating the superiority requirement with respect to a proposed class that includes foreign class members, as is the case here. See Vivendi, 242 F.R.D. at 95 (stating that "res judicata concerns have been appropriately grafted onto the superiority inquiry," but that the res judicata determination should not be "dispositive without either an evaluation of the likelihood of nonrecognition or a consideration of other factors which impact a determination of the superiority requirement"). "Where plaintiffs are able to establish a probability that a foreign court will recognize the res judicata effect of a U.S. class action judgment, plaintiffs will have established this aspect of the superiority requirement." Id. Plaintiffs argue that they reside in countries that are "more likely than not" to recognize an American judgment and thus class certification is appropriate. (Pltfs. Mem. at 24 (quoting Vivendi, 242 F.R.D. at 95)).

To satisfy this aspect of the superiority requirement, Plaintiffs must "demonstrate that the Foreign Courts would probably recognize as preclusive any judgment rendered by this Court (the 'Probability Standard')." In re Alstom SA Sec. Litig., 253 F.R.D. 266, 282 (S.D.N.Y. 2008). Under the Probability Standard,

> Plaintiffs carry the burden of demonstrating that "foreign court recognition is more likely than not," but if Plaintiffs are "unable to show that foreign court recognition is more likely than not, this factor weighs against a finding of superiority and, taken in consideration with other factors, may lead to the exclusion of foreign claimants from the class."

Id. (quoting Vivendi, 242 F.R.D. at 95). Even under the Probability Standard, however, courts should "evaluate the risk of nonrecognition along a continuum," and consider it along with other factors in determining whether plaintiffs have satisfied the superiority requirement. Vivendi, 242 F.R.D. at 95. "When determining foreign law, courts 'may consider any relevant material or source,' including determinations by other courts, and the fact that United States courts have generally certified proposed classes which included [certain foreign] lead plaintiffs and class members, is particularly persuasive." In re Alstom, 253 F.R.D. at 291 (citing Fed. R. Civ. P. 44.1).

Here, the Proposed Class is predominantly from Columbia (approximately 68%) and the United States (approximately 23%). (Kachroo Decl. ¶ 12) As to Columbia, that country signed and ratified the 1979 Inter-American Convention on Extraterritorial Validity of Foreign Judgments and Arbitral Awards (the "Convention"). (See Decl. of Juan Manuel Diaz Guerrero, dated October 31, 2014, ¶ 3) Although the United States is not a party to the Convention, the principals of the Convention are carried over to the provisions applicable to non-treaty nations. (Id.) Specifically, Article 693 of the Columbian Code of Civil Procedure grants to foreign judgments that are not subject to a treaty the force of domestic judgments. (Id.) A foreign judgment will be recognized and enforced by the Colombian courts through exequatur proceedings, as long as the judgment meets the following conditions:

> [a] The judgment does not refer to rights over property (in rem) located in Colombian territory at the time when the respective proceeding began; [b] The judgment does not conflict with public order laws of Colombia, other than Laws governing procedure; [c] The foreign judgment, in accordance with the laws of

11

the country when [it] was rendered, is final and a duly certified and authenticated copy has been presented to the court in Colombia; [d] The matter to which it refers is not of exclusive competence of Colombian courts; [e] No proceedings are pending in Colombia with respect to the same cause of action and no final judgment has been awarded in Colombia in any proceeding on the same subject matter and between the same parties; [f] In the proceedings commenced in the foreign court which issued the judgment, the defendant was served process in accordance with the law of such jurisdiction and in a manner reasonably designed to give an opportunity to the defendant for the defense of the action; [g] The exequatur proceeding, outlined in Article 695 of Colombian Civil Procedure Code, is carr[ied] out before the Colombia[n] courts.

(Id. ¶ 4)

In light of the unchallenged declaration that Columbia enforces foreign money judgments from U.S. courts without reexamination of the merits, and will more likely than not recognize and enforce the judgment in this class action case, this Court concludes that Plaintiffs have demonstrated that Columbian courts would more likely than not recognize a class-action judgment rendered in this case by this Court. Based on the submissions to this Court, it also appears unlikely that a duplicative action could be brought in Columbia. (See Guerrero Decl. ¶ 4)

The Proposed Class also includes individuals from Mexico (approximately 4%), Panama (approximately 1.5%), Peru (approximately 1.5%), Spain (approximately less than 1%), Italy (approximately less than 0.5%), Germany (approximately less than 0.5%), and Brazil (approximately less than 0.5%). (Kachroo Decl. ¶ 12) Plaintiffs argue that the courts of those countries which are members of the European Community or signatories to the Lugano Treaty will more likely than not recognize, enforce, and give preclusive effect to any judgment rendered in this action by this Court involving absent class members. (Pltfs. Mem. at 26) Furthermore, in a class action brought by investors seeking recovery for losses resulting from Bernard Madoff's Ponzi scheme, another judge in this District found that Mexico, Panama, Peru, and Brazil "would more likely than not recognize a class-action judgment rendered in [that] case." Anwar v.

Fairfield Greenwich Ltd., 289 F.R.D. 105, 119-20 (S.D.N.Y. 2013), vacated and remanded on other grounds sub nom. St. Stephen's Sch. v. PricewaterhouseCoopers Accountants N.V., 570 F. App'x 37 (2d Cir. 2014)).  Accordingly, this Court will certify a class which includes class members from Columbia, Mexico, Panama, Peru, Spain, Italy, Germany, and Brazil.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 is granted.  Plaintiffs Manuel Bolivar, Andres Rubio, and Janneth Quintero are appointed Class Representatives, and Kachroo Legal Services, P.C. is appointed Class Counsel.  The Clerk of the Court is directed to terminate the motion.  (Dkt. No. 28)

Dated: New York, New York
      January 14, 2015

SO ORDERED.

Paul G. Gardephe
United States District Judge