## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL BOLIVAR, ANDRES RUBIO and ) <br> JANNETH QUINTERO, individually and on behalf) <br> of all those persons similarly situated, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FIT INTERNATIONAL GROUP CORP., FOREX ) <br> INTERNATIONAL TEAM INC., JAIRO ) <br> ENRIQUE SANCHEZ, and DILIA MARGARITA ) <br> BAEZ, ) <br> ) <br>       Defendants. ) | CASE NO.: 12-CV-00781 |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO AN ASSESSMENT OF DAMAGES

Plaintiffs hereby file this Memorandum of Law in Support of Proposed Findings of Fact and Conclusions of Law Relating to an Assessment of Damages.

### FACTUAL BACKGROUND

This is a federal and state law class action, brought by Plaintiffs, individually and on behalf of all of those persons similarly situated (the "Class" or "Class Members") who invested funds in a platform for trading in foreign currency with Defendants Jairo Enrique Sanchez ("Sanchez") and Dilia Margarita Baez ("Baez"), through their purported corporation and/or limited liability company FIT International Group, and Defendants FIT International Group Corp. and Forex Investment Team Inc. (collectively "FIT"), as well as other foreign corporate entities, between January 1, 2000 and August 25, 2009, inclusive (the "Class Period").

Sanchez and Baez orchestrated an international Ponzi scheme, stealing significantly in excess of $100 million from deceived investors in the United States and abroad. They executed

1

this scheme principally through their Florida corporation, FIT International Group Corp. ("FIT Corp."), and fraudulent representations concerning a nonexistent purported New York corporation and/or limited liability company, FIT International Group, in addition to at least three other corporate instrumentalities, Forex International Team Inc. (New York) ("FIT New York"), FIT Forex Investment Team S.A. (Colombia) and FIT Forex Investment Team AG (Switzerland), among several other front companies – all mere deceptive devices for Sanchez and Baez's fraudulent schemes.

For years, Sanchez and Baez marketed themselves as foreign currency trading experts. Forex is the common name for the trading market in foreign currency, one of the largest markets in the world. The Forex trading market trades approximately three trillion dollars a day. In an ordinary Forex transaction, investors trade two currencies, for instance buying European Euros with United States Dollars, or vice versa.

Sanchez and Baez marketed their expertise directly and through various different corporate entities, including Forex Investment Team AG ("FIT Switzerland"), a company incorporated in Switzerland, and registered as an investment advisor in Colombia, that Sanchez and Baez deployed to solicit clients in Colombia and throughout the world. Sanchez and Baez also used Forex Investment Team, S.A., a Colombian company ("FIT Colombia"), which was not authorized to solicit clients for investment purposes.

As part of their scheme, Sanchez and Baez claimed to execute a proprietary Forex trading strategy through FIT Investment Group, a purported corporation. No such company exists or has ever been incorporated, as a corporation or limited liability company, in New York. In fact, FIT International Group, a purported New York corporation or limited liability company, was merely a sham to avoid any legitimate, enforceable contractual relationships with investors.

2

Sanchez and Baez solicited clients mainly by marketing to them through social connections. In particular, Mauricio Vasquez Uribe ("Uribe"), a dentist in Colombia who also invested with Sanchez and Baez, advertised FIT Group and its purported stable returns to a substantial number of investors. At various times, Plaintiffs were introduced to FIT Group by Uribe. In soliciting Plaintiffs, Uribe gave them each the same presentation regarding FIT Group and its Forex trading strategy, including the use of stop loss orders to limit exposure to significant losses, and showed them all the same video produced by Sanchez and Baez regarding FIT Group. He also provided them with fictitious, unenforceable trading agreements to sign purportedly with "FIT International Group," a nonexistent sham.

As Sanchez and Baez began to solicit more investment, and in order to elevate the sophistication of their scheme, and to provide an added measure of perceived legitimacy, on May 12, 2003, Baez incorporated yet another company, FIT International Group Corp., in the State of Florida. Sanchez and Baez were the sole shareholders, sole directors, and sole officers of the company. Sanchez and Baez also made false promises. They promised investors that their investments were protected because FIT had stop loss measures in place to limit any negative losses on investments. They also made other false promises. Defendants fraudulently promised that FIT Group "has all of the applicable required government approvals, licenses, and permits, including but not limited to, registration with National Futures Association ("NFA") as a commodity trader advisor (CTA)." In reality FIT Group did not exist, and it was merely one of the devices through which Sanchez and Baez defrauded investors, along with their corporate instrumentalities FIT Corp. and FIT New York, as well as FIT Switzerland and FIT Colombia. While applications were pending with the NFA, those applications were never approved.

Over the course of several years, FIT collected over $100 million from investors, initially deposited into accounts at JPMorgan Chase and later Bank of America in August 2008. FIT

3

collected money from clients as early as 2000. As to the lead Plaintiffs representing the class of investors, Bolivar invested \$182,000, Quintero invested \$137,000 and Rubio invested \$103,947.50. Defendants never invested the money in Forex trading as they had promised, but merely siphoned it away to secret private accounts at HSBC, UBS, and others. Defendants then used the funds for their own purposes.

In order to deceive clients that Defendants were trading on their behalf, with consistent, profitable returns, FIT provided investors internet access through www.forexfit.com and www.fitcolombia.com, to false and misleading electronic monthly statements that purportedly showed profitable foreign currency trades, and increasing investment returns over a consistent period. Contrary to their representations and statements, upon information and belief, FIT never invested in the amounts they had claimed and merely produced false trades to cover their misconduct and report false profits to investors.

Over time, as withdrawals and redemptions increased, coupled with decreasing new investors, the Ponzi scheme began to unravel. As a result thereof, in December 2008, Defendants were forced to deposit over \$6 million back into the FIT Corp. operating account at Bank of America to continue meeting withdrawals and redemptions. Uribe began warning investors in November and December of 2008 to pull their money out of FIT because he had concerns over their operations. On December 1, 2008, Uribe redeemed his entire investment in FIT totaling \$2,269,655.65. In January 2009, FIT released statements with characteristically low, but still positive returns. While the returns varied from investor to investor, the returns were generally well below 1%. Then, in February of 2009, FIT reported its first loss. Upon receiving the weak profits in February, investors began requesting significant redemptions of their investments. While Defendants claimed they would provide the requested redemptions, none were ever provided, having been stolen by the Defendants.

4

## PROCEDURAL BACKGROUND

This action arises from Sections 4b(a) and 22(a) of the Commodities Exchange Act of 1933 ("Exchange Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 25(a), and Regulation 1.1(b) promulgated thereunder 17 C.F.R. § 1.1(b), Sections 1962(c) and (d), and 1964 (c) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1962 (c) and (d), 1964 (c), and state common law. Plaintiffs filed their Complaint on February 1, 2012. Service upon Defendants was effectuated through publication. By order of the Honorable Paul Gardephe, Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 was granted and Plaintiffs were appointed Class Representatives, and Kachroo Legal Services, P.C. was appointed Class Counsel on January 14, 2015. Having received no responsive pleadings from any of the Defendants, Plaintiffs filed a Motion for Default with the Court. This Court entered an Order of Default in favor of Plaintiffs individually and on behalf of all those persons similarly situated, against the Defendants on October 9, 2015 along with an order for an inquest into damages. On October 21, 2015, the Clerk of this Court filed a Scheduling Order for a Damages Inquest requesting Plaintiffs' Proposed Findings of Fact and Conclusions of Law, and Affidavit of Service of the same on the Defendants.

## ARGUMENT

### I.   Introduction

F.R.C.P. rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter a the party's default." *Diversified Fin. Sys., Inc. v. Tomich Corp.*, No. 95-CV-4211 (ILG) (JLC), 1997 U.S. Dist. LEXIS 24408 (quoting Rule 55(a)). Upon entry of default, a defendant concedes all well-pleaded factual allegations of

liability, except those related to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Here the Defendants failed to respond to the complaint, to respond to motions for default judgment, to make any appearance, or otherwise defend this lawsuit.

Although the allegations of a complaint and memorandum of law pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not. *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). A Court must conduct inquiry to ascertain the amount of damages with reasonable certainty. *Id.* at 154-155. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." F.R.C.P. Rule 54(c). RICO and fraud damages should be "sufficient to place the plaintiff in the same financial position [it] would have occupied absent the illegal conduct." *Lukaszuk v. Sudeen*, No. 02-CV-5143 (JG) (NDG), 2007 U.S. Dist. LEXIS 95919. Under New York law, plaintiffs may recover [common law fraud] damages only for their actual 'out-of-pocket' pecuniary losses. *Aboeid v. Saudi Arabian Airlines, Inc.*, No. 10-CV-2518 (SJ) (VVP), 2011 U.S. Dist. LEXIS 64757. The compensable injury flowing from a violation of [the RICO statute] necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Also, plaintiffs bringing a RICO action may sue to recover "threefold the damages he sustains." *18 U.S.C. § 1964 (c)*. Awards of damages are "appropriate upon default judgment." *Geico v. Infinity Health Prods., Ltd.*, No. 10-CV-5611 (JG) (JMA), 2012 U.S. Dist. LEXIS 58058.

In this case, the Plaintiffs and the Class have sustained damages of $57,858,795.56, as set out in the Affidavit of Gaytri Kachroo, counsel for Class Representation ("Kachroo Affidavit") and the Exhibits 1-7 inclusive which provide documentary evidence including spreadsheets with a full listing organized by year based on the bank statements produced by JP Morgan Chase

6

Bank and the Bank of America, of: a) every money invested by Plaintiffs and the Class and received by the Defendants into the FIT corporate bank accounts; b) every money withdrawn on behalf of members of the Class taking account of wires in between corporate accounts so as not to double count any monies; and c) all monies withdrawn by the Defendants. Excluded from the damages claims are any monies spent on expenses spent on third parties unaware of the fraud, such as operational expenses. Plaintiffs Rubio and Quintero acting on behalf of the entire Class of investors have each provided Affidavits as to the damages they each sustained at Exhibit 7. Their Affidavits demonstrate that like all class members they relied on information provided by the Defendants in investing into their fraudulent scheme showing profitable foreign currency trades, and increasing investment returns over a consistent period resulting in the loss of their principal investment. (Exhibit 7)

The Kachroo Affidavit and attachments at Exhibit 1-6 detail the following:

In response to subpoenas served on the bank, bank statements were produced for the JP Morgan Chase Accounts relating to accounts held by the FIT companies and by Sanchez and Baez (Exhibit 4, Page 1) from the years 2003-2009. (Kachroo Affidavit at ¶17-19, Exhibit 5)

The totals of the audit review of such bank statements in the JP Morgan Chase accounts for the years 2003-2008, reveal that Investor deposits totaled $117,904,482.59; withdrawals sent to investors were in the amount of $60,378,208.24; and withdrawals by Defendants totaled $55,390,763.47. (Kachroo Affidavit at ¶19-26, Exhibit 5)

In response to subpoenas served on the bank, bank statements were produced for the Bank of America accounts held by the FIT companies (Exhibit 4, Page 2). An audit review of such produced bank statements of the FIT International Group Corporation for the year 2008 and 2009, revealed: Investor deposits of $21,847,400.00; withdrawals and redemptions sent to

7

investors in the amount of $13,359,261.85 for these years; and specific withdrawals by Defendants in the amount of $2,468,032.09. (Kachroo Affidavit at ¶ 27, 28, Exhibit 6). Miscellaneous expenses not attributed to specific withdrawals were in the total amount of $6,020,106.06 from these same accounts (Kachroo Affidavit at ¶28, Exhibit 6).

As a result of the audit conducted by accounting and forensics personnel, authenticated copies of the spreadsheets of the review produced as Exhibits 5 and 6, KLS has determined that deposits to the accounts at JP Morgan Chase Bank and Bank of America during the time periods outlined totaled $139,751,882.59. (Kachroo Affidavit at ¶ 29) Of these deposits, withdrawals or redemptions sent to the Class of investors amount to $73,737,470.09, and withdrawals by the Defendants into their own accounts or accounts under their control amount to a total of $57,858,795.56. (Kachroo Affidavit at ¶29, Exhibits 5, 6).

## II.    Prejudgment Interest

Plaintiffs are further entitled to prejudgment interest. "Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such interest." *Gutman v. Klein*, No. 03-CV-1570 (BMC) (RML), 2010 U.S. Dist. LEXIS 124704. Where a plaintiff has already received treble damages, the court may not award prejudgment interest so as to avoid a windfall unrelated to any business injuries. However, plaintiffs can still recover prejudgment interest on their state law claims. *See C.P.L.R. § 5001*. "Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory." *In re Crazy Eddie Sec. Litig.*, 948 F.Supp. 1154, 1166 (E.D.N.Y. 1996). The statutory rate for prejudgment interest is nine percent per annum. *See C.P.L.R. § 5004*.

The New York Civil Practice Laws and Rules ("C.P.L.R.") provides that prejudgment interest shall be calculated "from the earliest ascertainable date the cause of action existed," but

8

when "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *C.P.L.R. § 5001*. In the fraud context, prejudgment interest accrues from the date the fraud occurred.

"In a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." *Geico v. Damien*, 10-CV-5409 (SLT) (JMA), 2011 U.S. Dist. LEXIS 13865. Furthermore, defendants in a RICO conspiracy are "jointly and severally liable for all of [a] plaintiff's damages, even those with which an individual defendant was not personally involved." *Infinity Health Products, Ltd.*, 2012 U.S. Dist. LEXIS 58058.

Prejudgment interest at nine percent (9%) from January 1, 2000 through and including September 9, 2015, totals Eighty One Million Two Hundred Five Thousand Two Hundred Fifteen and 86/100 Dollars ($81,205,215.86). Prejudgment interest can further be calculated at nine percent (9%) from January 1, 2000 through and including October 8, 2015, as the Order of Default was filed on October 9, 2015, would total an additional $39,992.80.

Statutory fees have been calculated in the amount of $455.00; constituting a $350.00 filing fee and service of process fees of $95.00.

As a result, the total of damages sustained by the Class is: a) $57,858,795.56 in theft of investment funds; b) $81,797,604.20 in interest from January 1, 2000 through October 8, 2015; and c) $455.00 in costs relating to the filing and service of process for a total amount of $139,656,854.70, and such other damages and interest as the court may determine or award.

## III.    Post judgment Interest

In addition to the foregoing, Plaintiffs are entitled to post judgment interest from

defaulting Defendants. Pursuant to *28 U.S.C. § 1961*, post judgment interest is calculated from

the date of entry of judgment at a rate equal to the weekly average one-year constant maturity

Treasury yield, to be computed by the Clerk of the Court.

Respectfully submitted,

KACHROO LEGAL SERVICES, P.C.

/s/ Dr. Gaytri D. Kachroo
Dr. Gaytri D. Kachroo (#4038915)
245 Park Avenue
24th Floor
New York, NY 10167
(857) 829-3041
(617) 864-1125 (fax)
gkachroo@kachroolegal.com

*Attorneys for Plaintiffs*

Dated: November 20, 2015

## CERTIFICATE OF SERVICE

I, Gaytri D. Kachroo, counsel for the Plaintiffs, hereby certify that I have served a copy of the

foregoing document on Defendants through the Electronic Filing System on 20th day of

November, 2015.

Gaytri D. Kachroo, Esq