UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MANUEL BOLIVAR, ANDRES RUBIO and
JANNETH QUINTERO, individually and on behalf
of all those persons similarly situated,

    Plaintiffs,

  v.

FIT INTERNATIONAL GROUP CORP., FOREX
INTERNATIONAL TEAM INC., JAIRO
ENRIQUE SANCHEZ, and DILIA MARGARITA
BAEZ,

    Defendants.

CASE NO.: 12-CV-00781

ECFCASE

# PLAINTIFFS SUPPLEMENT TO ADDRESS DEFICIENCIES IN THE INQUEST SUBMISSION

## I. Order to Supplement and Address Deficiencies

On September 13, 2016 United States Magistrate Judge Debra Freeman issued an Order[1] requesting Plaintiffs to supplement Plaintiffs' Damages Inquest to address the following deficiencies found in Plaintiff's Proposed Findings of Fact and Conclusions of Law Relating to an Assessment of Damages: (1) Revision of Plaintiffs Damages Spreadsheet so that it is admissible in compliance with Federal Rule of Evidence ("FRE") 1006; (2) Modification of the damages spreadsheet to clearly outline the relevance of all accounts and to authenticate business records as an exception to the hearsay rule in compliance with FRE 803(6); (3) the relevance of the account activities of Defendant Baez; and (4) pleading for treble damages and/or attorneys' fees.

---

[1] Attached as Exhibit 1.

Plaintiffs appreciate this opportunity to supplement and correct, as appropriate, their Proposed Findings of Fact and Conclusion of Law Related to an Assessment of Damages and herein submit supplemental material including copies of all bank statements obtained and reviewed. Plaintiffs have filed copies of the entire supplemental submission, including the Honorable Judge Paul G. Gardephe's Order of Default[2] entered for Plaintiffs, with the Clerk of the Court, as well as with the Chambers of the Honorable Judge Freeman, by and through their attorney, Gaytri D. Kachroo.

Plaintiffs hereby incorporate by reference their Proposed Findings of Fact and Conclusions of Law Relation to an Assessment of Damages.[3] Additionally, Plaintiffs submit a revised signed Declaration of Class Counsel, Gaytri D. Kachroo.[4] Plaintiffs hereby supplement the record to address the following deficiencies by: (1) submission of a declaration by a forensic accounting firm that has reviewed all financial statements and the losses sustained by Plaintiffs as visible in such statements confirming the totals relevant to establishing damages on the spreadsheets; (2) submission of a declaration by a custodian of records at both JP Morgan Chase, N.A. ("JPMC") and Bank of America, N.A. ("BOA"); (3) Bank statements produced in response to subpoenas; (4) Revised and corrected spreadsheets based upon additional review by forensic accounting firm; and (4) prayer for additional relief of treble damages.

II. **Foundational Support for Summary Charts**

Due to the voluminous records of the FIT International Group Corp. bank accounts at both JP Morgan Chase ("JPMC") and Bank of America ("BOA"), Plaintiffs submit a spreadsheet summarizing the account records to prove their contents with regard

---
[2] Attached as Exhibit 2.
[3] Attached as Exhibit 3.
[4] Attached as Exhibit 4.

to the damages claim. Plaintiffs hereby authenticate the underlying evidence, the JPMC and BOA bank statements, subject to FRE 901(a)[5] and FRE 901(b)(1),[6] by submitting the following testimony of a witness with knowledge:

1. Andre Ramirez, a custodian of records at JP Morgan Chase, N.A.'s National Subpoena Processing unit in Brooklyn, New York has provided a Declaration,[7] stating the following bank statements were: (i) made at or near the time by, or from information transmitted by, someone with knowledge of the information contained therein; (ii) kept in the course of the regularly conducted business activity of JP Morgan Chase, N.A. and it is the regular course of business of JP Morgan Chase, N.A. to make sure records; and that this declaration was (iii) made in response to a subpoena served upon JP Morgan Chase, N.A. dated March 16, 2010.

   <u>JP Morgan Chase Account Name: Fit International Group Corp.</u>

   AJC 292-5019565-65 (covering the period from 5/03-6/09)
   AJC 292-5019565-66 (covering the period from 5/03-10/08)
   AJC 292-6103411-65 (covering the period from 2/04-10/08)
   A/C 292-5024778-65 (covering the period from 10/05-10/08)
   A/C 292-6103534-65 (covering the period from 11/04-8/08)

   <u>JP Morgan Chase Account Name: Dilia Margarita Baez</u>

   AJC 292-0103182-65 (covering the period from 2/04-5/09)
   AIC 292-0103166-65 (covering the period from 4/05-9/09)

2. Jorge Salas, a duly authorized bank officer and/or custodian of records at Bank of America, N.A. with authority to execute and certify to the authenticity and accuracy of the records produced, has provided an Affidavit,[8] stating the following bank statements were produced by Bank of America, N.A., and are original documents or are true copies of records of a regularly conducted banking activity that: (i) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (ii) were made and kept in the course of the regularly conducted business activity of Bank of America, N.A. personnel or by persons acting under their control; and (iii) were made and kept by the regularly conducted activity of Bank of America,

---

[5] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claim it is."
[6] The following are examples … of evidence that satisfies the requirement: (1) [t]estimony that an item is what it is claimed to be."
[7] Attached as Exhibit 5.
[8] Attached as Exhibit 6.

N.A. as a regular practice on or about the time of the act, condition or event recorded.

<u>Bank of America Account Name: Fit International Group Corporation</u>

898016070207 Operating Account (covering the period from 8/08-12/09)
898016070197 Wire Account (covering the period from 8/08- 12/09)

Plaintiffs submit, under FRE 1006[9], a signed Declaration of partner Adam Apak, M.Sc.,[10] a forensic accountant, and partner of A.P. Consulting in Cambridge, MA, reviewing the spreadsheets. The spreadsheet summary[11] is an accurate reflection of the bank account records in question as provided in Mr. Apak's Declaration. *See* Exhibit 7. Additionally, Plaintiffs hereby submit duplicates of all the bank account statements available to both the Clerk of the Court and the Honorable Judge Debra Freeman's Chambers for examination, copying, or both. The findings of damages in the forensic review conducted by AP Consulting Inc. confirmed by Mr. Apak are as follows:

3. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2003 (Exhibit 5, Page 1) revealed: Investor deposits of $391,548.92 into account 2925019565-65; withdrawals sent to investors of $164,820.61; and withdrawals by Defendants to accounts under their control in the amount of$64,609.05.

4. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2004 (Exhibit 5, Page 1) revealed: Investor deposits of$9,414,582.29 into account 2925019565-65; withdrawals sent to investors of$1,122,582.56; and withdrawals by Defendants in the same year in the amount of $7,396,969.36.

5. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2005 (Exhibit 5, Page 1) revealed: Investor deposits of $24,300,470.73 into account 2925019565-65; withdrawals sent to

---

[9] "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."
[10] Attached as Exhibit 7.
[11] Attached as Exhibit 8.

investors of $5,407,281.57; and withdrawals by Defendants in the same year in the amount of $18,941,354.51 from the same account.

6. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2006 (Exhibit 5, Page 2) revealed: Investor deposits of $26,824,835.42 into account 2925019565-65; withdrawals to investors of $15,633,300.68; and withdrawals by the Defendants to accounts under their control in the amount of $9,706,557.83 from the same account.

7. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2007 (Exhibit 5, Page 2) revealed: Investor deposits of $26,340,926.68 into account 2925019565-65; withdrawals sent to investors of$16,863,673.31; and withdrawals sent to the Defendants in the amount of $9,347,614.65 from the same account.

8. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements for the year 2008 (Exhibit 5, Page 2) revealed: Investor deposits of$30,632,118.55 into account 2925019565-65; withdrawals sent to investors of$21,186,549.51; and withdrawals sent to the Defendants in the amount of $9,933,658.07 from the same account.

9. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the totals of such bank statements for the years 2003-2008, reveal that Investor deposits totaled $117,904,482.59; withdrawals sent to investors totaled $60,378,208.24; and withdrawals by Defendants to their personal bank accounts, and to various third party companies or companies established and incorporated by Sanchez and Baez in various international jurisdictions were in the total amount of $55,390,763.47 from these accounts at JP Morgan Chase Bank.

10. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the bank statements of the FIT International Group Corporation for the year 2008 and 2009, revealed: Investor deposits of $21,847,400.00 into accounts 898016070207 and 898016070197; withdrawals/redemptions sent to investors were in the amount of $18,532,089.25 for these years; and specific withdrawals by Defendants to accounts under their control were in the amount of $3,315,310.75.

11. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, the amount reflected on the spreadsheets, deposits to the accounts at JP Morgan Chase Bank and Bank of America during the time periods outlined totaled $139,751,882.59. Of these deposits, withdrawals or redemptions sent to the Class of investors amount to $78,910,297.49, and withdrawals sent to the Defendants into their own accounts or accounts under their control amount to a total of $58,706,074.22.

12. As per the audit review of AP Consulting Inc., confirmed in the Declaration of Mr. Apak, it was found that additional miscellaneous expense amounts not disbursed or withdrawn into the Defendants' bank accounts nor redeemed by the Class of investors amount to a total of $8,155,616.94.

### III. "Business Records" Requirements

Plaintiffs invoke the "business records" exception to the rule on hearsay, FRE 803(6),[12] in order to establish the admissibility of the underlying bank statements that the above summary spreadsheets are based upon. Plaintiffs hereby submit a signed declaration from a custodian of records at JPMC,[13] Andre Ramirez, detailing that the JPMC bank account statements in question were produced in compliance with FRE 803(6), specifically that: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; [and] (D) all these conditions are shown by the testimony of the custodian or another qualified witness. *See* Exhibit 5.

Plaintiffs submit a signed declaration from a custodian of records at BOA,[14] Jorge Salas, stating that the BOA bank account statements in question were created in

---

[12] "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness … [a] record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."
[13] Exhibit 5.
[14] Exhibit 6.

compliance with FRE 803(6), specifically that: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; [and] (D) all these conditions are shown by the testimony of the custodian or another qualified witness. *See* Exhibit 6.

IV.     **Accounts in the Name of Defendant Baez**

Plaintiffs have submitted the spreadsheet summarizing the bank account statements of FIT International Corp. modified, in order to better articulate and illustrate the unlawful flow of funds by Defendants. The summary now shows the flow of money out of the JPMC Bank Account of FIT International Group, Corp. ending in '6565. The summary shows $55,390,763.47 of investor money unlawfully flowing out of '6565 JPMC account, and into various other accounts, mainly accounts opened by Defendants in the name of sham corporations, in order to conceal their illicit activities.

Upon review by forensic accounting expert Mr. Apak, it was determined Plaintiffs previous reference to the JPMC bank accounts of Defendant Baez served no purpose, as funds in this account were determined to be irrelevant to a demonstration of the accounts that incurred the losses and demonstrated the flows in accordance with Defendants' Ponzi scheme.

V.      **Treble Damages and Attorneys' Fees**

Plaintiffs do not seek attorneys' fees in this matter. However, Plaintiffs do seek treble damages pursuant to 18 U.S.C. §1964(c)[15], in order to send a clear message to

---

[15] "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall

Defendants and all potential future actors of the egregious nature of their conduct and the severe loss suffered by Plaintiffs and the entire class represented by them. A judgment of treble damages in this case would demonstrate the severe punishment the court is prepared to order in such cases of financial fraud as a deterrent to others.

Plaintiffs filed a class action Complaint[16] on February 1, 2012, alleging the following causes of action: (1) fraud; (2) breach of fiduciary duty; (3) conversion; (4) unjust enrichment; (5) commodities fraud under Commodities Exchange Act and Regulation ("CEAR") 4(B); (6) control person liability under the CEAR §13(B); and (7) violation of RICO, under 18 U.S.C. § 1962. *See* Exhibit 6. The Honorable Judge Paul G. Gardephe entered an Order of Default in favor of Plaintiffs Manuel Bolivar, Andres Rubio, and Janneth Quintero on October 8, 2015. *See* Exhibit 2. "Upon entry of default, a defendant concedes all well-pleaded factual allegations of liability, except those related to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants, by virtue of Judge Gardephe's October 8, 2015 Order of Default, have conceded liability to all seven counts, and therefore have conceded violation of RICO, 18 U.S.C. §1962. Plaintiffs, therefore, are entitled to treble damages, as allowed by 18 U.S.C. §1964. "Although there is some sense in which RICO treble damages are punitive, they are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing [the damages caused from racketeering activity]."[17]

---

recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."
[16] Attached as Exhibit 9.
[17] Aetna Cas. & Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1572 (1st Cir. 1994) (quoting Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1310 (7th Cir. 1987) (internal quotations omitted)).

Plaintiffs are further entitled to prejudgment interest. "Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such interest." *Gutman v. Klein*, No. 03-CV-1570 (BMC) (RML), 2010 U.S. Dist. LEXIS 124704. Where a plaintiff has already received treble damages, the court may not award prejudgment interest so as to avoid a windfall unrelated to any business injuries. However, plaintiffs can still recover prejudgment interest on their state law claims. *See C.P.L.R. § 5001*. "Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory." *In re Crazy Eddie Sec. Litig.*, 948 F.Supp. 1154, 1166 (E.D.N.Y. 1996). The statutory rate for prejudgment interest is nine percent per annum. *See C.P.L.R. § 5004*.

The New York Civil Practice Laws and Rules ("C.P.L.R.") provides that prejudgment interest shall be calculated "from the earliest ascertainable date the cause of action existed," but when "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *C.P.L.R. § 5001*. In the fraud context, prejudgment interest accrues from the date the fraud occurred.

"In a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." *Geico v. Damien*, 10-CV-5409 (SLT) (JMA), 2011 U.S. Dist. LEXIS 13865. Furthermore, defendants in a RICO conspiracy are "jointly and severally liable for all of [a] plaintiff's damages, even those with which an individual defendant was not personally involved." *Infinity Health Products, Ltd.*, 2012 U.S. Dist. LEXIS 58058.

In addition to the foregoing, Plaintiffs are entitled to post judgment interest from defaulting Defendants. Pursuant to *28 U.S.C. § 1961*, post judgment interest is calculated from the date of entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield, to be computed by the Clerk of the Court.

"Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness."[18] In a similar case, the Court of Appeals for the Eighth Circuit stated, "28 U.S.C. §1961 specifically authorizes post-judgment interest, and we believe such interest is appropriate on both the damages and prejudgment interest in this case to compensate the Class for its investment and the interest the investment would have earned if not for [Defendants'] fraud."[19] Pursuant to *28 U.S.C. § 1961*, post judgment interest is calculated from the date of entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield, to be computed by the Clerk of the Court.

"The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion."[20] "In deciding whether an award of prejudgment interest is warranted, a court should consider '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relatives equities of the award, (iii) the remedial purpose of the statute

---

[18] Blau v. Lehman, 368 U.S. 403, 414 (1962).
[19] Arthur Young & Co. v. Reves, 937 F.2d 1310, 1338 (8th Cir. 1991).
[20] SEC v. First Jersey Securities, Inc., 101 F. 3d 1450, 1476 (2nd Cir. 1996) (quoting *Endico Potatotes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2d Cir. 1995) (internal quotations omitted)).

involved, and/or (iv) such other general principles as are deemed relevant by the court.'"[21]

In the present case, prejudgment interest, from the date of the original fraud, is warranted because: (i) Plaintiffs, and the Class represented, entrusted their money to Defendants, with the purpose of investing and growing their assets, instead, Defendants used Plaintiffs funds for their own personal spending, never conducting a single investment transaction.; (ii) prejudgment interest will help Plaintiffs fully recover the lost time value of their money by being awarded prejudgment interest for their injuries; (iii) RICO treble damages are largely compensatory, *supra*; and (iv) "[i]t may reasonably be argued, however, that RICO damages are primarily compensatory in nature, and thus prejudgment interest was properly awarded."[22]

Prejudgment interest at nine percent (9%) from January 1, 2000 through and including September 9, 2015 on the loss of $58,706,074.22, totals $82,944,445.14. Prejudgment interest can further be calculated at nine percent (9%) from January 1, 2000 through and including October 8, 2015, as the Order of Default was dated October 9, 2015, and would total an additional amount of $419,788.64.

Prejudgment interest at nine percent (9%), on the trebled amount of $176,118,222.65, from January 1, 2000 through and including September 9, 2015, totals $248,833,335.33. Prejudgment interest can further be calculated at nine percent (9%), on the trebled amount, from September 9, 2015 through and including October 8, 2015, as the Order of Default was dated October 9, 2015, and would total an additional amount of $1,779,328.78.

---

[21] *Id* (quoting *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir.)).
[22] Aetna Cas. & Sur. Co., at 1572.

11

As a result, the total of damages sustained by the Class is: a) $176,118,222.65 in trebled damages for the theft of investment funds; b) $248,833,335.33 in Prejudgment interest from January 1, 2000 through October 8, 2015; c) $455.00 in costs relating to the filing and service of process, for a total amount of $424,952,012.98, and such other damages and interest as the court may determine or award.

## VI. Conclusion

Plaintiffs would like to thank the Honorable Judge Debra Freeman for allowing submission of this supplemental material, and thereby allowing Plaintiffs to begin to recover the enormous sums of money wrongfully taken from them by Defendants. Plaintiffs, by and through their attorney, Gaytri D. Kachroo, have submitted duplicate copies of all supplemental materials, and delivered them to the Clerk of the Court and also to Judge Freeman's chambers.

Dated: New York, New York
October 11, 2016

Respectfully submitted,

KACHROO LEGAL SERVICES, P.C.

By. Gaytri D. Kachroo
Dr. Gaytrl D. Kachroo (GK2010)
Kachroo Legal Services. P.C.
219 Concord Ave (verify address)
Cambridge, MA 02138
(617) 864-0755

**CERTIFICATE OF SERVICE**

I, Gaytri D. Kachroo, counsel for the Plaintiffs, hereby certify that I have served a copy of the foregoing document on Defendants through the Electronic Filing System on 12th day of October, 2016.

*Gaytri D. Kachroo*
Gaytri D. Kachroo